A. C. Preble et al., Appellees, v. Architectural Iron Workers' Union of Chicago, Local No. 63, I. A. B. S. and O. I. W. et al., Appellants.

Gen. No. 34,729.

436

Heard in the first division of this court for the first district at the October term, 1930. ▮▮▮▮ Opinion filed March 2, 1931.

TIMOTHY J. FELL, for appellants.

WINSTON, STRAWN & SHAW, for appellees; JOHN C. SLADE and G. B. CHRISTENSEN, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal the defendants seek to reverse a decree of the superior court of Cook county enjoining them from calling a strike or directing any of the members of the defendant union to cease their employment, etc.

On May 20, 1929, complainants filed their verified bill which was amended three days later, by leave of court, and on that day, notice having been given to the defendants, a temporary order was entered restraining and enjoining the defendants from calling any strike or cessation of work by any of the members of the defendant union in respect to any work being done on any building or buildings being erected within Cook county, by any member of the complainant union except where any construction work was being done by non-union workmen. The restraining order was entered upon condition that the complainants file their bond, which was done on the same day. Nothing appears to have been done from May 23, 1929, when the temporary restraining order was entered, until July 3 following, when the defendants entered their appearance, and on July 20 they filed their demurrer. From the date of the filing of the demurrer nothing of record appears until the 11th of March, 1930, when the defendants moved that the demurrer be set down for hearing and that the temporary restraining order

be dissolved; on that day an order was entered setting the matter for March 24, 1930. No action was taken until June 12, 1930, when the defendants' motion and demurrer were overruled, they elected to stand by their demurrer and a final decree was entered perpetually restraining and enjoining the defendants "from calling or directing or causing to be called or directed or otherwise brought about, any strike or strikes or cessation of work by any of the members of said Architectural Iron Workers' Union of Chicago, Local No. 63, upon or in respect to any . . . work being done or to be done on any building or buildings . . . being erected or to be erected within the County of Cook in the State of Illinois, . . . by or under the direction of any member of the Iron League of Chicago, . . . excepting only in such case or cases, if any, as building construction work is being done on the particular building by non-union workmen."

Defendants' demurrer to the bill as amended having been overruled, and they having elected to stand by the demurrer, the question turns on the sufficiency of the allegations of the bill.

The substance of the allegations of the bill in short is, that certain members of a special committee authorized by the Iron League of Chicago, a voluntary association, and the Preble-Harrison Door Co., of Illinois, a corporation, and the L. S. Ingeman Ornamental Iron Company, an Illinois corporation, as members of the Iron League of Chicago, filed the bill on behalf of the Iron League Association and all members of such Association, against the defendants, "ARCHITECTURAL IRON WORKERS' UNION OF CHICAGO, Local No. 63, I. A. B. S. and O. I. W." and the officers of the union, and certain of the same individuals as officers of the arbitration board of the union; that the Iron League of Chicago and its members are engaged in the business of manufacturing, erecting and install-

ing architectural and ornamental iron and structural steel employed in the construction and equipment of buildings in Chicago, and that complainants and the defendant union entered into a written contract in force December 1, 1926, which, as extended, will by its terms expire in June, 1934, whereby the parties agreed that there should be no lockout by the complainants, or strikes, or abandonment of work by the defendant union or its members without first submitting any dispute to arbitration; that the purpose of the agreement was to fix wages and conditions of employment of the members of the defendant union so as to prevent strikes and lockouts by providing for arbitration of all disputes through a joint conference board.

It is further alleged that some time after the contract went into effect a dispute arose between the defendant union and another union as to whether certain work, which was being done on buildings being erected by complainants should be performed by members of the defendant union, which was referred to as "iron workers," or the members of the other union known as the "sheet metal workers," and that this dispute was referred to a "joint conference board," and that their decision was adverse to the defendant union; that the defendant union refused to abide by the decision and, contrary to its contract with complainants, began to call strikes, insisting that the members of their union were entitled to install certain work instead of the members of the Sheet Metal Workers' Union; that the calling of strikes was in direct violation of the express provisions of the written agreement entered into between the complainants and defendants and without submission or offer to submit the matter to arbitration as the agreement provided; that the dispute between the defendant union and the sheet metal workers' union was a "purely jurisdictional dispute"; that there was no complaint made by any member of the defendant union as regards

their employment hours or wages—no complaint as against the complainants; but on the contrary it was alleged that the members of the defendant union were willing to continue their work and would continue to do so unless strikes were called by the defendants. The prayer was that the calling of strikes be enjoined except in cases, if any, where non-union men were employed by complainants.

We think it must be obvious to anyone that the defendants were not much disturbed by the issuance of the injunction. The record shows that although the restraining order was issued on May 23, 1929, after notice to the defendants, no move was made by the defendants to have the injunction dissolved until about ten months thereafter, and it was more than one year after the order for the temporary injunction before the matter was brought to hearing on the demurrer. Everyone knows that injunction matters are given precedence over practically every other kind of suit or action. However, we will pass upon the merits of the case.

The contentions of the defendants are in substance that the allegations of the bill were insufficient to warrant the issuance of the writ and that complainants have an adequate remedy at law. And the argument seems to be that the decree enjoins the members of the defendant union from quitting their employment with the plaintiff, either singly or by concerted action. We think this construction of the decree is unwarranted. Obviously, no one can, under the law, be enjoined from ceasing work whenever he desires to do so with or without cause. This has always been the law as has been often stated by our Supreme Court, and there is no decision to the contrary. It is sufficient to refer to but two cases: *Franklin Union v. People*, 220 Ill. 355; and *Kemp v. Division No. 241*, 255 Ill. 213.

In the *Franklin Union* case, which involved the issuance of an injunction in a labor dispute, the court said (p. 377): "It will be readily conceded by all that labor has the right to organize as well as °capital, and that the members of Franklin Union No. 4 had the same legal right to organize said union as the members of the Chicago Typothetae had to form that association, and that the members of Franklin Union No. 4 had the legal right to quit the employment, either singly or in a body, of the members of said associa- tion, with or without cause, if they saw fit, without rendering themselves amenable to the charge of conspiracy, and that the courts would not have been authorized to enjoin them from so doing even though their leaving the employment of the members of the association involved a breach of a contract." This same language was quoted with approval in the *Kemp* case, *supra*.

The decree in the instant case enjoined only the calling of strikes. This in no way involved the right of the members of the defendant union from quitting their employment if they saw fit to do so. We think the contract entered into between the complainant, the Iron League of Chicago, and the defendant union, is a valid contract. Its commendable purpose was to fix the terms and conditions of employment so that there would be no lockout or strikes without submitting the dispute, if any, to arbitration. And the defendant union, through its officials, having without any fault on the part of the complainant, called strikes and threatened to call other strikes, solely on account of a dispute with another union and without any endeavor at arbitration in violation of the terms of the contract will be enjoined by a court of equity. *Goldman v. Cohen,* 227 N. Y. S. 311 (222 App. Div. 631); *Herzog v. Cline,* 227 N. Y. S. 462; *Carlson v. Carpenter Contractors' Ass'n,* 305 Ill. 331; *Carpenters' Union v.*

*Citizens Committee,* 333 Ill. 225; *Franklin Union v. People, supra; Kemp v. Division No. 241, supra.*

In the *Goldman* case the Appellate Division of the Supreme Court of New York, consisting of five judges, held that where a strike was called by a labor union in violation of its contract with its employer, a court of equity would issue its writ of injunction to prevent a violation of the contract. The court there said (p. 313): "The making of the contract being conceded, and upon this record the same subsisting in full force and effect, the plaintiffs are entitled, pending the trial of the action, to injunctive relief for the protection of such of their rights as are threatened and the violation of which will produce irreparable damage. Usually in the past it has been the employer who has sought the help of the courts for the protection of his rights, but obviously the same principles of law apply equally to both employer and labor union. Where a strike is threatened by a labor union in violation of its contract with an employer, the right of a court of equity to issue an injunction to prevent such contractual violation is well settled. . . .

"Likewise, where an employer is threatening to order a lockout of his employees in violation of his contract with the labor union in behalf of the employees, the right of a court of equity to prevent such contractual violation is necessarily measured by the same principle. . . .

"In the case of the employer seeking the injunction to prevent a strike of his employees in violation of a contract, such inadequacy of his remedy at law is well established. Likewise this court in a recent case has squarely held that, where an employer threatens a lockout in violation of a contract between the union and the employer, such union and the employees have not an adequate remedy at law."

While the precise question has not been passed upon by our Supreme Court, we think the same principle has been announced a number of times in the cases above cited. We think it so obvious that there was no adequate remedy at law that it would be superfluous to discuss the matter further.

Complaint is made that the decree perpetually enjoined the defendants. Obviously the decree must be construed to mean that the injunction would not be in effect after the date of the expiration of the contract, namely, June, 1934.

Before affirming the decree in this case we feel impelled to say that in the last few years the words "and/or" have, with increasing frequency, crept into legal documents, including pleadings and even instructions to juries, that only tend to confuse. In the bill in this case it is alleged that "the said members are individually engaged in the business of manufacturing and/or erecting or installing architectural and ornamental iron and structural steel" etc. We must condemn the use of the words "and/or" because they tend to confuse and mislead. While the use of these words in the allegation above quoted is not so inappropriate as in many of the cases which come before us, we mention them here to show our disapproval of them. In a close case where these words are used, a situation may be presented that would warrant this court in reversing a judgment or decree. That the use of these words tends to uncertainty and confusion, see *State v. Dudley,* 159 La. 872; *Lamborn v. National Park Bank of New York,* 208 N. Y. S. 428.

The decree of the superior court of Cook county is affirmed.

*Affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.