(No. 29686.—

YELLOW CAB COMPANY *et al.*, Appellees, *vs.* THE CITY OF
CHICAGO *et al.*, Appellants.

*Opinion filed January 22, 1947—Rehearing denied March 17, 1947.*

Marvin J. Bas, Richard E. Westbrooks, and Kimball Smith, all of Chicago, for appellants.

Kirkland, Fleming, Green, Martin & Ellis, and Jesmer & Jesmer, (Weymouth Kirkland, Howard Ellis, John M. O'Connor, Jr., and Julius Jesmer, of counsel,) all of Chicago, for appellees.

Mr. Justice Fulton delivered the opinion of the court:

This is an appeal from the action of the circuit court of Cook county, granting to appellees a permanent injunction restraining appellants from cancelling or causing to be cancelled any taxicab licenses of appellees pursuant to notices given to appellees by the public vehicle license commissioner of the city of Chicago as directed by resolution of the city council of the city of Chicago. Said injunction also restrained appellants from issuing or causing to be

issued any permits or licenses pursuant to a resolution, order or ordinance of the city council of the city of Chicago, passed January 16, 1946, and restrained appellants from issuing any permits or licenses in excess of the total number of 3000 without first holding hearings with respect to the public convenience and necessity therefor and without first affording appellees an opportunity to apply for and obtain such licenses to the number thereof provided for in a previous ordinance of the city council, passed on December 22, 1937.

The validity of certain ordinances of the city of Chicago is challenged by the parties in this cause and the trial judge has certified that the public interest requires the appeal be taken directly to this court in view of the questioned validity of these municipal ordinances.

For a proper consideration and determination of the issues in this case it is necessary to review the action of the city of Chicago and of the appellees regarding the operation of taxicabs in that city during the past fifteen years. On May 18, 1934, the city council passed a comprehensive ordinance to regulate the operation of taxicabs in the city of Chicago. This ordinance provided for the issuance of licenses to operate taxicabs in the city for a term ending December 31, 1940, unless sooner terminated or revoked as provided in the ordinance. The ordinance provided for the payment of license fees and the establishment of taxicab rates to be charged uniformly by all taxicabs, limited the number of passengers to be carried in each cab, required the payment of judgments rendered for personal injury, property damage or wrongful death against any licensee, limited the hours of work of each driver and contained other provisions designed for the protection of the citizens of the city of Chicago. The ordinance also contained a provision that no licenses should be subsequently authorized except upon transfer to permit replacement of the taxicabs or in the annual renewal of such

licenses unless the commissioner, after a hearing, found that public convenience and necessity required additional taxicab service. No new licenses could be issued to any licensee unless he accepted this ordinance. This comprehensive ordinance also established a basis for making a determination as to the necessity and public convenience requiring licensing of additional taxicabs and provided that in the event of discontinuation of service of any taxicab excepting on account of strikes, acts of God, or anything beyond the control of the licensee the commissioner might give notice to the licensee to restore such taxicabs to service and the failure to restore such service within five days after notice would give the commissioner the discretion to recommend to the mayor that the license be revoked and the mayor in his discretion might revoke the same. This ordinance provided that it should be in full force and effect from and after its passage, if one or more persons, firms, or corporations operating taxicabs should within 60 days, file with the city clerk formal written acceptance of the same. Both appellees filed acceptances thereof.

Based upon this ordinance, 4108 taxicab licenses were issued in the city of Chicago. The Yellow Cab Company received 2166 licenses and the Checker Taxi Company received 1500 licenses. Subsequent operation of taxicabs in the city of Chicago resulted in unprofitable operations from the standpoint of the drivers and the licensees, resulting in strikes and other violence on the city streets, and in 1937 it was determined that a reduction in the number of taxicabs operated in the city and an increase in the fares charged was in the public convenience and necessity. Thereafter on December 22, 1937, the city council passed an ordinance providing for a method of voluntary surrender by licensees of enough of their licenses to reduce the total from 4108 to 3000. This ordinance provided that in the event the number of authorized licenses should later be increased above the 3000 figure said licenses, to the num-

ber surrendered, should first be issued to licensees rat-ably in proportion to the number voluntarily surrendered by each licensee. The ordinance likewise provided that authority of the licensees to operate taxicabs under the 1934 ordinance be extended to December 31, 1945, provided the licensees accepted the terms of the 1937 ordinance.

The Yellow Cab Company voluntarily surrendered 571 of its licenses and the Checker Taxi Company surrendered 500 of its licenses. Other licensees surrendered the balance of the required reduction. The appellees and other licensees continued to operate under this 1937 ordinance. The evidence shows that in 1940 and in 1941 appellees replaced their taxicab fleets in the city with new equipment, but since that time due to economic restrictions occasioned by World War II they have been unable to obtain new equipment customarily used by them for taxicab purposes. The evidence shows that the average life expectancy of a taxicab in the city of Chicago is about three years and that those operated in the city by appellees at the time of the hearing in this case have exceeded their life expectancy by more than 1½ years.

With the end of the war it was thought that appellees and others would be able to replace their taxicab fleets with new equipment and on June 21, 1945, the city council passed an extension ordinance extending the term of the ordinance of 1937 for five years, ending December 31, 1950. This action of the city council was preceded by pledges made to the city by appellees that they would replace their fleets with new equipment as soon as possible.

On December 28, 1945, the city council passed a resolution reciting that demands for all forms of local transportation had increased on account of World War II and directed the commissioner to enforce the provisions of the 1937 and 1945 ordinances by compelling full operation of 3000 taxicabs in the city by January 15, 1946. In the event that full operation of said taxicabs could not be accom-

plished, the commissioner was authorized to take steps for licensing additional taxicabs in the city.

On January 16, 1946, the city council passed the following: "ORDERED, That the Public Vehicle License Commissioner be and he is hereby authorized and directed to issue two hundred fifty (250) permits for the operation of taxicabs, and that ex-servicemen be given preference in the issuance of such permits; such permits to be issued only to individuals and to be distributed generally through the city." On January 22, 1946, the commissioner addressed a letter to each of the appellees advising them that his office had surveyed their records and that the Yellow Cab Company had 234 taxicabs and the Checker Taxi Company had 87 taxicabs which had not been operating. He directed that they be placed in operation within five days or the licenses for said cabs would be cancelled.

Appellee Yellow Cab Company filed its complaint for injunction on January 24, 1946. Subsequently, appellee Checker Taxi Company was given leave to appear as a plaintiff. In their complaints as amended, appellees alleged the existence of the various ordinances and actions by the city council and the public vehicle license commissioner, and in addition, alleged that they had invested several million dollars in taxicab equipment, real estate and property; had acquired contract rights; had complied with all ordinances; had given up licenses under the 1937 ordinance, and had ordered new fleets of taxicabs, relying on their contract rights. They also alleged that the action of the defendants in attempting to cancel their licenses and to issue additional permits, interfered with and violated their contract rights secured to them by the State and Federal constitutions, and would cause irreparable harm, injury and damage to their goodwill, business and investments, and that they had no adequate remedy at law.

The defendants filed a motion to dismiss the complaints and also filed answers to the complaints and amendments

thereto. By these pleadings the defendants contended that the complaints were filed prematurely; that no cause of action existed at the time of filing the complaints; that a court of equity had no jurisdiction to restrain a legislative body from exercising its governmental or legislative functions; that the ordinances of 1934, 1937 and 1945, are void; that the city of Chicago does not have authority to prohibit, exclude or limit the number of motor vehicles for hire upon the streets without equal application to all citizens; that said ordinances in effect grant an absolute monopoly denying to all citizens the equal protection of the laws and are contrary to the public policy of the State of Illinois, and constitute class legislation; that said ordinances delegate legislative powers to unnamed individuals to arbitrarily determine if said ordinances would become a law at sometime in the future, and that said ordinances are *ultra vires,* because the city attempted to part with or abdicate its legislative and governmental powers.

After a hearing, the court enjoined the defendants as above set forth. From the evidence it appears that the appellees are unable to operate 321 taxicabs by reason of their inability to obtain repairs and replacement parts for said vehicles. This inability has been occasioned by the economic restrictions incident to World War II and is beyond the power of appellees to remedy. Appellees operate only vehicles which have been specially constructed for taxicab service and do not use conventionally designed passenger automobiles. It further appears that appellees have made some effort to obtain standard passenger automobiles to replace their fleets, but that in the opinion of appellees and expert witnesses familiar with the maintenance of taxicab fleets, the use of conventionally designed automobiles would be impractical since it would complicate the maintenance of the taxicab fleets inasmuch as parts of one taxicab would not be interchangeable with other taxicabs and mechanics trained to service one make of vehicle could not

satisfactorily and economically repair and service other makes of vehicles. It further appears that there are many individuals in the city of Chicago who have obtained on the open market conventionally designed passenger cars which they have converted to suitable taxicab use. It further appears that there are certain advantages to the operation of taxicabs of special construction since they have many specially designed features for the safety, convenience and enjoyment of the passengers, and for easier operation on the public streets. Certain of these features are extra heavy frames, specially constructed bodies, specially designed brakes and steering mechanism, finger guards on door hinges, specially padded partitions, specially designed wheels, tires, ventilators and other features. Their weight is approximately 1000 pounds more than the average passenger car.

The appellants contend in this court that:

1. The trial court has no jurisdiction to enjoin the exercise of the legislative, governmental, and discretionary functions of the city council and public officials.

2. The resolution of the city council requiring 3000 taxicabs be put into service on or before January 15, 1946, is a valid and proper exercise of the legislative function of the city council.

3. The ordinance of January 16, 1946, authorizing and directing the public vehicle license commissioner to issue 250 permits for operation of taxicabs in the city of Chicago is valid and is a proper exercise of the legislative power of the city council.

4. The ordinances of the city of Chicago of May 18, 1934, December 22, 1937, and June 21, 1945, providing for the issuance of licenses and regulation of the taxicab business in the city of Chicago are null and void.

The appellees contend that the action of the trial court should be affirmed for the following reasons:

1. The inoperability of 321 taxicabs was beyond the control of appellees and, therefore, no action could be taken by appellants toward the cancelling of such licenses.

2. The action of the city council of January 16, 1946, in authorizing and directing the issuance of. 250 permits for the operation of taxicabs in the city of Chicago is void because there is no finding that public convenience and necessity required the issuance of additional taxicab licenses; the ordinance is vague and uncertain, it is discriminatory, does not afford appellees the right to apply for permits or licenses in excess of the 3000 as guaranteed by the 1937 ordinance, and it violates and ignores appellees' contract rights secured by the Federal and State constitutions.

3. The ordinances of 1934, 1937 and 1945 are all valid and constitute binding contracts between the city and appellees.

As to the contention that the trial court had no jurisdiction to grant the injunction in this case on the ground that it interfered with the exercising of legislative, governmental and discretionary functions of the city council, we cannot agree. Appellees have not sought to enjoin the city council from acting upon the question of taxicabs and their regulation. Appellees have merely sought to enjoin the city and its officials from taking action based upon ordinances or resolutions of the city council which appellees contend are invalid. The case of *Fletcher* v. *City of Paris,* 377 Ill. 89, cited by appellants and relied upon heavily by them, is authority for the proposition that equity cannot enjoin the holding of an election for the adoption of an ordinance nor can equity enjoin the passage of legislation, inasmuch as the holding of an election is the exercise of a political right and equity will not interfere in a case affecting the enjoyment of political rights where the holding. of an election is a necessary step in the legislative process of adopting and bringing into existence a municipal ordinance. Likewise that case holds that inasmuch as the

judiciary has no supervision of the legislative branch of the government, courts will not enjoin the passage of legislation, since the restricting power of courts is against the enforcement rather than the passage of unauthorized orders, resolutions or ordinances of municipal corporations. In the case at bar the injunction does not restrict the city council from enacting such ordinances or resolutions as it might care to regarding the regulation of taxicabs in the city of Chicago. It merely restricts the action of the city and the license commissioner, the city clerk and the mayor from taking certain action in the nature of enforcing ordinances or resolutions previously adopted by the city council.

Appellees in this case could properly maintain this action since they are in immediate danger of sustaining direct injury as a result of the enforcement and carrying out of the resolutions of the city council of December 28, 1945, and January 16, 1946. *Fletcher* v. *City of Paris,* 377 Ill. 89.

We cannot agree with appellants' contention that the city of Chicago cannot limit or restrict the number of taxicabs which are to be operated upon the streets of the city of Chicago. In the case of *People ex rel. Johns* v. *Thompson,* 341 Ill. 166, this court had before it for consideration the validity of an ordinance regulating taxicabs, passed September 25, 1929, which contained provisions similar in many respects to the ordinances of 1934, 1937 and 1945, the validity of which are questioned in this proceeding. In that case we upheld the validity of that ordinance and we stated, "The ordinance is not discriminatory on the ground that it singles out taxicabs for regulation and does not apply to private vehicles or other public vehicles drawn by horses. No one has any inherent right to use the streets or highways as a place of business. Where one seeks a special or extraordinary use of the streets or public highways for his private gain, as by the operation of an omnibus, truck, motorbus or the like, the State may regulate such use of the vehicle thereon or may even prohibit such

use." We also held in that case that the power of the city to pass the ordinance in question had been authorized under the Cities and Villages Act then in force. We likewise held that the right to regulate includes the right to impose reasonable conditions and restrictions and that the power to regulate the use of streets by vehicles included the power to promote the general welfare and prevent accidents, and that the reasonableness of police regulation is not necessarily what is fairly appropriate under all circumstances. Certainly, the city of Chicago, having the right to regulate traffic and parking, to build bridges, viaducts, tunnels and sewers, to select streets for through or local traffic, to levy a city vehicle tax, to provide for the underground laying of wires or other facilities in the street and to provide for the general policing of the city, could, in the exercise of its powers conferred upon it by the legislature, properly determine the number of taxicabs which it would permit to be operated in the city of Chicago. Any conclusion other than this would render ineffective the authorizations by the legislature to the city for the regulation of traffic and parking and the policing of the city. It is well known and this court takes judicial notice of the facts that there are numerous congested areas in the city of Chicago and that the very nature of the taxicab business contributes to this traffic congestion.

Appellants contend that the ordinances of 1934, 1937 and 1945, providing for the regulation and licensing of taxicabs in the city of Chicago, are invalid since such ordinances create, or attempt to create, a monopoly in the taxicab business in the city of Chicago. A careful study of the record indicates that at the time of the hearing in this cause there were 348 persons, firms or corporations, including appellees, holding licenses for the operation of 3000 taxicabs in the city of Chicago. It is true that the vast majority of the 3000 licenses are held by appellees, however no taxi operator and no person who desires to

enter the taxicab business has, in this cause, complained of a monopoly. By these ordinances which are said to create a monopoly the city has reserved the right to fix fares and has the right to inspect the books and records of the various licensees. In addition, the city has reserved the right to issue, when authorized by general ordinance, additional licenses for the operation of taxicabs without the consent of any of the licensees. The sole restriction upon the city's right tó issue additional licenses is that there shall be a finding of public convenience and necessity for the additional licenses. In the case of *Capitol Taxicab Co.* v. *Cermak*, 60 F. 2d 608, involving a similar ordinance, the court stated, "To the argument that the ordinance tends to create a monopoly, it is sufficient answer that the city has not by its legislation surrendered its right to grant other and further certificates to all other applicants."

In the case at bar it is contended that the proviso contained in section 2 of the 1937 ordinance restricts the right of the city to issue additional taxicab licenses only to appellees. Section 2 of the ordinance of 1937 provides, "Notwithstanding Section 1 of this ordinance taxicab licenses in excess of 3,000 may be issued when authorized by general ordinance without consent of licensees under the ordinance of May 18, 1934; provided that such licensees who shall have voluntarily surrendered any taxicab licenses or their right to renewal of any taxicab licenses on or before March 31, 1938, shall have the right to such number of taxicab licenses as were so surrendered, and such right shall be prior to the right of any person, firm or corporation until such licensees who have so surrendered their taxicab licenses shall have either released their right to apply for taxicab licenses or shall have failed to make application therefor within thirty (30) days after publication of notice of public hearing upon the question of public convenience and necessity for the issuance of licenses for taxicabs as provided by ordinance."

The ordinance of 1937 was a general ordinance of general application and merely attempted to provide a method for meeting the difficulties incident to the operation of taxicabs resulting from a period of economic depression. This ordinance was passed for the purpose of establishing proper regulation for the taxicab business in the city of Chicago during a critical period. Anyone holding a taxicab license could have surrendered the same and would have been given protection in regaining the license as afforded by this ordinance. It should be borne in mind that at the time the 1937 ordinance was passed, all taxicab licenses in the city of Chicago did not expire until December 31, 1940, and, therefore, the city of Chicago could not legally at that time reduce the number of taxicab licenses in the city by general ordinance. Conditions demanded that the number of licenses be reduced immediately and in order to secure their reduction, this ordinance granting a preference to people who voluntarily surrendered licenses was enacted. The proviso giving to licensees surrendering taxicab licenses the right to regain their licenses, when the city of Chicago determines that additional licenses are to be authorized, merely gives to those people a preference for the period of 30 days after the publication of notice of public hearing upon the question of public convenience and necessity. Should these former licensees fail to apply for licenses within that 30-day period, then anyone who desires to engage in the taxicab business can obtain a license providing he meets the general requirements of the ordinance. It is clear that no exclusive right to operate taxicabs has been granted to any person or corporation in expressed terms. The fact that appellees may be the only persons who surrendered taxicab licenses and are, therefore, the only persons entitled to the preference does not render the ordinance void, since the ordinance is of general application and since the preference in obtaining additional licenses is given only for a limited time and is based upon a valuable

consideration. The city council of the city of Chicago, in the exercise of its legislative discretion, could well have determined that this ordinance was a proper exercise of its police power for the regulation of the taxicab business and the regulation of the traffic and congestion upon its streets. It is not the province of this court to inquire as to the wisdom of passing the ordinance. As long as the same does not violate any constitutional limitation, it is a valid enactment, though the courts might disagree with the wisdom of its provisions.

Appellants have also contended that the ordinances of 1934, 1937 and 1945 do not constitute contracts between the city and the operators of taxicabs, on the ground that the ordinances only confer a license and do not grant a franchise. A review of the authorities indicates that the distinction between a license and franchise has developed mainly by reason of the difference in the type of business performed. In the case of public utilities, almost without exception, the grant of authority to them to conduct business within the limits of a city is referred to as a franchise. On the other hand, the right of a theater, garage, restaurant, bowling alley and other businesses to engage in business is referred to as a license. Counsel have pointed out in great detail the distinction between franchises and licenses and have based much weight upon the fact that in a franchise the holder thereof can be compelled to operate his business while in the case of a license the licensee cannot be compelled to operate his business against his will. However, a review of the authorities in other States indicates that the terms "license" and "franchise" have been used often synonymously and that each State has a somewhat different meaning for the two terms.

The question to be determined in the case at bar is whether or not a licensing ordinance can constitute a contract between the city and the licensees. It is the opinion of this court that the licensing ordinances in the case at

bar did create a contract between the city and the licensees. In the case of *Peoria Railway Co.* v. *Peoria Railway Terminal Co.* 252 Ill. 73, we held that the privilege of using the streets of a city having been granted by an ordinance was not recoverable at the will of the city after it had been accepted by the licensee. We also held that where the license had been acted upon in a substantial manner and the revocation thereof would be inequitable, the same could not be revoked. This court in the case of *American Can Co.* v. *Emerson,* 288 Ill. 289, held that a license granted to a foreign corporation to do business in the State of Illinois constitutes a contract between the foreign corporation and the State of Illinois. It being the opinion of this court that the ordinances granting licenses to appellees and others operating taxicabs in the city of Chicago constitute a valid contract between appellees and the city of Chicago, and it being the opinion of the court that such ordinances are not illegal as being beyond the power of the city to enact, we pass to the question of the delegation of power under the ordinances and we find that the delegation of power to the commissioner herein is not illegal. In the case of *People* v. *Thompson,* 341 Ill. 166, we considered the delegation of power under a similar ordinance regulating taxicabs in the city of Chicago and held that such delegation was proper. The only material difference between the provisions of the ordinance there questioned and the ordinances here, as to the delegation of power, is that in that case the power was given to a commission. We do not regard this difference as being material, inasmuch as proper standards for the action of the commissioner have been established by the ordinances.

Appellants have also contended that the action of the chancellor in holding invalid the order of the city council of January 16, 1946, authorizing the issuance of 250 taxicabs "permits," should be reversed. It is the opinion of this court that this action of the chancellor should likewise

be affirmed. In view of the previous finding by the city that public convenience and necessity required the operation of 3000 taxicabs in the city of Chicago, and in view of appellees' admitted inability to keep all of their taxicabs in operation, due to conditions beyond their control, the city could properly provide for the issuance of temporary permits during a critical period when it was impossible to keep in operation all of the taxicabs theretofore licensed. However, the operation of such additional taxicabs authorized by the city council to bring the total number of cabs in operation to the necessary 3000 should be subject to the conditions of the general ordinance regulating the taxicab business in the city of Chicago. Certainly, the temporary permittees should be compelled to charge the same fares, submit to the same regulation and abide by the same safety precautions as provided in the general ordinance. The action of the city council of January 16, 1946, does not in any way attempt to bring the temporary permittees under the same regulation as other taxicabs operating in Chicago, nor does this action provide for a termination of these permits when taxicab licensees are able to furnish the service which public convenience and necessity requires. The chancellor properly held this action of the city council invalid.

Appellees have raised many other arguments as to the validity and the propriety of the chancellor's action, which have received careful consideration, but, in view of our decision on the points heretofore discussed, it would serve no useful purpose to further lengthen this opinion by a piecemeal discussion thereof. For the reasons which we have heretofore stated, the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*