People of the State of Illinois ex rel. Robert L. Hafer, et al., Appellants, v. William P. Flynn, Public Vehicle License Commissioner of City of Chicago, Defendant. Yellow Cab Company and Checker Taxi Company, Inc., Intervening Petitioners, Appellees.

Gen. No. 47,022.

First District, First Division.

June 19, 1957.

Released for publication October 4, 1957.

302

Lane, Duffy & Connell, of Chicago (Thomas J. Duffy and Eugene F. Connell, of Chicago, of counsel) for appellants.

Julius Jesmer, of Chicago (William C. Wines, of Chicago, of counsel) for Intervenor Checker Taxi Co.; Ettelson & O'Hagan, of Chicago (Robert E. Samuels, Benjamin Samuels, and Leonard B. Ettelson, of Chicago, of counsel) for Yellow Cab Company.

JUDGE McCORMICK delivered the opinion of the court.

A petition was filed February 25, 1954 by eighteen relators for a writ of mandamus to compel William P. Flynn, Public Vehicle License Commissioner of the city of Chicago, to issue certain taxicab licenses to them. Answer was filed by Flynn and the writ was ordered to issue. Thereafter the order was vacated, and the Yellow Cab Company and the Checker Taxi Company, Inc. (hereafter referred to as intervenors) were given leave to intervene. They filed intervening petitions, and the plaintiffs filed an answer thereto. The intervenors made a motion for summary judgment. The court sustained the motion and dismissed the petition for mandamus, from which ruling of the court this appeal is taken.

The original petition for mandamus alleged, among other things, that pursuant to and by virtue of certain sections of article 23 of the Cities and Villages Act (Ill. Rev. Stat. 1953, chap. 24) an ordinance was passed by the council of the city of Chicago December 20, 1951, as amended, which became effective January 1, 1952 (chap. 28, Municipal Code of Chicago); that under such ordinance it was the duty of William P. Flynn, Public Vehicle License Commissioner, to ascertain the fitness of applicants for license and the fitness of their motor vehicle to be operated as taxicabs, and his further duty to issue licenses to those applicants found fit not in excess of 3,761; that the plaintiffs had filed applications for licenses and in all other respects had complied with the requirements of the said ordinance; that the defendant Flynn had conducted an investigation as to the character and reputation of the plaintiffs as required by the ordinance and had found them fit to pursue the occupation of cab driver; that subsequent to January 30, 1952 there were 3,761 licenses issued and in use; that at the time of the filing of the present petition the number of licenses issued and in use had been reduced by death or other causes to 3,742; that there were 19 existing and unissued licenses and it was the duty of the defendant Flynn under the provisions of said ordinance to issue 18 of the said licenses to the plaintiffs; that he had failed and refused to issue such licenses after being duly served with notice and demand.

To the petition Flynn filed an answer, in which as a defense he set up that under the ordinance it was not mandatory upon him to issue such licenses up to 3,761 to applicants even though they had been ascertained to be qualified.

Plaintiffs filed a motion for judgment on the pleadings and on August 4, 1954 the trial court entered a judgment order in favor of the plaintiffs for a writ of

mandamus, which order directed the defendant Flynn to forthwith issue public passenger vehicle licenses to each and all of the plaintiffs. On the same day a writ of mandamus was served on the defendant Flynn.

On August 24, 1954 a petition of the Yellow Cab Company for leave to intervene was filed. The petition in substance alleged that on February 25, 1946 a decree was entered in case No. 46 C 943 forever enjoining and restraining the city of Chicago from issuing more than 3,000 public passenger vehicle licenses except in accordance with the terms of the decree; that the decree provided that the city of Chicago be restrained from issuing licenses in excess of 3,000 without first holding hearings with respect to the public convenience and necessity therefor and without first affording plaintiffs therein (intervenors here) an opportunity to apply for and obtain such licenses to the number provided for by an ordinance adopted December 22, 1937.

On September 20, 1954 an order was entered granting Checker Taxi Company, Inc. leave to intervene. The allegations contained in its petition were substantially the same as those contained in the petition of the Yellow Cab Company. On September 27, 1954 Flynn filed motions to strike the petitions filed by the said intervenors. Similar motions were filed by the plaintiffs. These motions alleged in substance that the petitions to intervene should be denied for the reason that the injunction decree relied on by the intervenors was based on a contract ordinance passed by the city council on December 22, 1937, as amended; that the said contract ordinance expired on December 31, 1951; that the injunction decree neither enlarged nor created rights beyond those granted in the said contract ordinance; and that therefore the petitioners had no interest in the subject matter of the action now before the court.

305

On January 19, 1956 the motions were overruled and the intervening petitions were permitted to stand as answers to plaintiffs' petition for a writ of mandamus. The plaintiffs by leave of court filed replies to the aforesaid petitions of the intervenors, in which, among other things, they realleged the authority of the city of Chicago to issue the licenses in question under the then controlling taxicab ordinance and denied that the intervenors had any property interests in the subject matter of the action. No reply was filed by Flynn.

On February 26, 1956 the intervenors filed a motion for summary judgment, in which they alleged that under the provisions of chapter 28 of the Municipal Code of Chicago the Public Vehicle License Commissioner, while restricted to the issuance of not more than 3,761 public passenger vehicle licenses, is under the obligation only to issue licenses in renewal of valid outstanding licenses for the preceding year, and is not required and has no authority to issue any licenses to applicants who were not prior thereto the holders of valid unrevoked licenses. The substance of the decree for injunction issued in the Circuit Court of Cook county in 1946 is set out, and it is alleged that under such decree the city of Chicago and the Public Vehicle License Commissioner are prohibited from issuing any licenses in excess of 3,000 without first holding hearings with respect to the public convenience and necessity therefor and without first affording the intervenors the opportunity to apply for and obtain such licenses to the number thereof provided for in the ordinance passed by the city council on December 22, 1937; that the said decree had been affirmed by the Supreme Court of Illinois in Yellow Cab Co. v. City of Chicago, 396 Ill. 388, and that the said decree is now in full force and effect. The substance of the ordinance of December 22, 1937 is set out, and it is alleged that no opportunity has been given the intervenors to apply for and receive additional licenses up to the number provided for in

the said ordinance; that since the plaintiffs in this case seek the issuance of a writ of mandamus to require the Public Vehicle License Commissioner to issue 18 licenses to them and such licenses would be in excess of the total number of 3,000 public passenger vehicle licenses and as such are licenses to which the intervenors have a prior right, the plaintiffs therefore have no right in law to the issuance of such licenses to them; and that the issuance of such licenses would be in violation of the injunction decree and the contract between the city of Chicago and the intervenors.

On February 24, 1956 the court entered an order that the plaintiffs take nothing by their suit and the defendants go hence without day. The trial judge made no written findings, but at the time he entered the order he made an oral statement which appears in the record, and in which he based his decision upon the existence of the injunction issued in 1946 and upon the theory that under the 1937 ordinance the city had no power to issue any additional licenses until it had restored the licenses surrendered by the intervenors at that time. The plaintiffs take this appeal from such order. Flynn filed no briefs, nor did he take any part in the appeal.

In the judgment order for the writ of mandamus entered by the trial court on August 4, 1954 the court found, among other things, that the plaintiffs had filed applications in the office of the Public Vehicle License Commissioner for public passenger vehicle licenses for the operation of taxicabs in the city of Chicago and had done all other things necessary and according to law as to said applications in compliance with chapter 28 of the Municipal Code of Chicago; that the corporate authorities of the city of Chicago have lawfully created 3,761 public passenger vehicle licenses by reason of public necessity; that due to surrender, failure to renew and other reasons there are presently 3,742 issued licenses and that there are pres-

ently 19 existing and unissued licenses; that the Public Vehicle License Commissioner has investigated the plaintiffs to this action and their vehicles in compliance with the city ordinance and has found that the plaintiffs were qualified and fit to pursue the occupation of cabmen and that their vehicles for which licenses were applied were of safe and proper condition as provided for by the said ordinance; and that thereupon it became and was the duty of the said Public Vehicle License Commissioner to forthwith issue to them the licenses for which they applied.

The only issues raised by the answers of the intervenors to the original petition for the writ of mandamus and by the reply filed by the plaintiffs to such answers, was the question of the effect of the contract ordinance of 1937 and the 1946 injunction decree of the Circuit Court. These issues were the only ones before the trial court which could in any way affect its findings in the original order for a writ of mandamus. In order to dismiss the petition for mandamus the trial court must have found, and did find, (1) that the injunction decree of the Circuit Court prohibiting the issuance of any licenses in excess of 3,000 was in full force and effect at the time the instant case was before it, and (2) that the 1937 ordinance was still in full force and effect and that under the provisions thereof the Public Vehicle License Commissioner could issue no licenses in excess of 3,000 except upon public hearings with reference to the public necessity and convenience therefor and a recognition of the prior right of the intervenors to apply for such licenses as they had surrendered at the time of their acceptance of the 1937 ordinance.

For greater convenience in following the subsequent discussion we set forth a chronological table of various enactments and proceedings with reference to taxicab ordinances in the city of Chicago:

May 18, 1934 Comprehensive regulatory ordinance, expiring December 31, 1940.

December 22, 1937 Amendatory contract ordinance extending 1934 ordinance to December 31, 1945.

June 26, 1945 Ordinance extending 1934 and 1937 ordinances to December 31, 1950.

December 28, 1945 Public Vehicle License Commissioner was authorized by the council to license additional taxicabs in the city unless by January 15, 1946 there was a full operation of 3,000 taxicabs.

January 16, 1946 Ordinance directing Public Vehicle License Commissioner to issue 250 additional permits.

February 25, 1946 Injunction decree entered in the Circuit Court of Cook County (affirmed in Yellow Cab Co. v. City of Chicago, 396 Ill. 388).

December 29, 1950 Ordinance extending 1934 and 1937 ordinances to April 1, 1951.

March 2, 1951 Ordinance extending 1934 and 1937 ordinances to July 1, 1951.

June 14, 1951 Ordinance extending 1934 and 1937 ordinances to December 30, 1951.

September 20, 1951 Ordinance extending 1934 and 1937 ordinances to December 31, 1951.

December 20, 1951 Regulatory ordinance effective January 1, 1952.

January 30, 1952 New contract ordinance passed, which ordinance was not accepted and never went into effect.

For a proper consideration and determination of the issues in this case it is necessary to review a chapter in the turbid and turbulent history of mass transportation in Chicago. The history of this epoch is summarized by our Supreme Court in Yellow Cab Co. v. City of Chicago, supra.

309

On May 18, 1934 the city council passed a comprehensive ordinance to regulate the operation of taxicabs in the city of Chicago. This ordinance provided for the issuance of licenses to operate taxicabs in the city for a term ending December 31, 1940. The ordinance provided for the payment of license fees and for the establishment of taxicab rates to be charged uniformly by all taxicabs, limited the number of passengers to be carried in each cab, required the payment of judgments rendered for personal injury, property damage or wrongful death against any licensee, limited the hours of work of each driver, and contained other provisions designed for the protection of the citizens of the city of Chicago. The ordinance also contained a provision that no licenses should be subsequently authorized except upon transfer to permit replacement of a taxicab or in the annual renewal of such licenses unless the commissioner, after a hearing, found that public convenience and necessity required additional taxicab service. No new licenses could be issued to any licensee unless he accepted this ordinance. This comprehensive ordinance also established a basis for making a determination as to the necessity and public convenience requiring the licensing of additional taxicabs, and provided that in the event of discontinuance of service of any taxicab excepting on account of strikes, acts of God, or anything beyond the control of the licensee, the commissioner might give notice to the licensee to restore such taxicabs to service, and the failure to restore such service within five days after notice would give the commissioner the discretion to recommend to the mayor that the license be revoked and the mayor in his discretion might revoke the same. This ordinance provided that it should be in full force and effect from and after its passage, if one or more persons, firms or corporations operating taxicabs should within 60 days file with the city clerk formal written acceptance of the same. Both of the appellees

310

in the Supreme Court case (the intervenors herein) filed acceptances thereof.

Based upon this ordinance, 4108 taxicab licenses were issued in the city of Chicago. The Yellow Cab Company received 2,166 and the Checker Taxi Company received 1,500 licenses. Subsequent operation of taxicabs in the city of Chicago resulted in unprofitable operations from the standpoint of the drivers and the licensees, resulting in strikes and other violence on the city streets, and in 1937 it was determined that a reduction in the number of taxicabs operated in the city and an increase in the fares charged were in the public convenience and necessity. Thereafter on December 22, 1937 the city council passed an ordinance providing for a method of voluntary surrender by the licensees of enough of their licenses to reduce the total from 4,108 to 3,000. This ordinance provided that in the event the number of authorized licenses should later be increased above the 3,000 figure, said licenses, to the number surrendered, should first be issued to licensees ratably in proportion to the number voluntarily surrendered by each licensee. The ordinance likewise provided that the authority of the licensees to operate taxicabs under the 1934 ordinance be extended to December 31, 1945, provided the licensees accepted the terms of the 1937 ordinance.

The Yellow Cab Company voluntarily surrendered 571 of its licenses and the Checker Taxi Company surrendered 500 of its licenses. Other licensees surrendered licenses sufficient to make up the balance of the required reduction.

On June 26, 1945 an ordinance was passed by the city council which extended the expiration date of the 1934 ordinance to December 31, 1950 by amending the applicable section in the 1937 ordinance.

Because of the difficulty in replacing taxicabs due to the restrictions occasioned by World War II, the number of taxicabs operated was less than 3,000, and

311

on December 28, 1945 the city council authorized the commissioner, unless there was a full operation of 3,000 taxicabs by January 15, 1946, to license additional taxicabs in the city. On January 16, 1946 the city council passed an ordinance directing the Public Vehicle License Commissioner to issue 250 permits for the operation of taxicabs and ordered that such permits should be issued only to individuals and distributed generally throughout the city. On January 22, 1946 the commissioner sent a letter to each of the intervenors advising them that the Yellow Cab Company had 234 taxicabs and the Checker Taxi Company 87 taxicabs which were not operating, and directing that they be placed in operation within five days or the licenses for the said cabs would be canceled. The Yellow Cab Company, together with the Checker Taxi Company, filed a complaint for an injunction, in which they alleged that since they had given up licenses under the 1937 ordinance the action of the defendants (the city of Chicago and the Public Vehicle License Commissioner) in attempting to cancel their licenses and to issue additional permits interfered with and violated their contract rights. The defendants filed a motion to strike in which they contended, among other things, that the ordinances of 1934, 1937 and 1945 were void in that the city did not have authority to prohibit, exclude or limit the number of vehicles for hire upon the streets without equal application to all citizens; that said ordinance in effect granted an absolute monopoly which was contrary to the public policy of the State. After a hearing the trial court entered a permanent injunction restraining the defendants from canceling any taxicab licenses of the plaintiffs (intervenors herein) and also restrained the defendants from issuing any permits or licenses pursuant to the resolution, order or ordinance of the city council of the city of Chicago passed January 16, 1946 and restrained the defendants from issuing any permits or licenses in excess of the

312

total number of 3,000 without first holding hearings with respect to the public convenience and necessity therefor and without first affording plaintiffs an opportunity to apply for and obtain such licenses to the number thereof provided for in a previous ordinance of the city council passed on December 22, 1937. The city of Chicago took an appeal from the injunction order of the Circuit Court of Cook county, and in Yellow Cab Company v. City of Chicago, supra, the Supreme Court affirmed the Circuit Court. The termination dates of the 1934 ordinance and the 1937 ordinance were extended from time to time to December 31, 1951.

■■ It is the contention of the intervenors here that by the said injunction order the city was forever restrained from taking any action to increase the number of taxicabs operating on the streets of Chicago until it complied with the provisions set forth in the ordinance of 1937. It is well established law that the city of Chicago, under the Cities and Villages Act (Ill. Rev. Stat. chap. 24) has the right to regulate the use of the streets by vehicles, including taxicabs. People v. Thompson, 341 Ill. 166; Yellow Cab Co. v. City of Chicago, supra. In the latter case it was held that the city had the power to pass the ordinances of 1934 and 1937, and it was also held that both ordinances were contract ordinances. It has also been held that an injunction does not create a right. In Illinois Cent. R. Co. v. Illinois Commerce Com., 387 Ill. 256, the court said (p. 272):

"An injunction does not create a right. It merely protects the rights of plaintiff from unlawful or injurious interference. In thus preventing, it does not give a perpetual or vested right in the remedy, the law governing the injunction, or the effect of it. The plaintiff is not entitled to the same measure of protection at all times and under all circumstances. An injunction decree which is entered upon facts which are not of such a permanent character as to be substantially im-

313

pervious to change, is both executory and ambulatory. It marches along with time."

In this case the injunction order of the Circuit Court of Cook county in 1946 sought to prevent a violation by the city of the contract entered into between the city and the intervenors by virtue of the ordinances of 1934 and 1937. An injunction restraining the breach of a contract has been held to constitute a negative specific enforcement of the contract. Ulrey v. Keith, 237 Ill. 284. In order for such an injunction to issue in the first place there must have been an existent right which was violated. The injunction is coextensive with that right. When the right ceases, by expiration of the time fixed in the contract or otherwise, the injunction also ceases to have any force or power. It becomes functus officio. City of Quincy v. Bull, 106 Ill. 337; Preble v. Architectural Iron Workers Union, 260 Ill. App. 435; Yeager v. Manning, 183 Ill. 275. Consequently the time when the said injunction order ceases to have any force depends solely and entirely upon the contract or contracts which it was sought to implement.

Both the original ordinance of 1934 and the ordinance of 1937 were contract ordinances. The ordinance of 1937 was not in itself a separate, complete and comprehensive ordinance. It was an amendment to the 1934 contract ordinance. The wording of the ordinance itself so indicates. It states in its preamble, as a basis for the enactment of the ordinance, that "certain licensees under the ordinance of May 18, 1934 have agreed to surrender a sufficient number of taxicab licenses to effect a reduction of the number of taxicabs in the City of Chicago to 3,000." It also provides for public hearings upon the question of public convenience and necessity for the issuance of additional licenses, but the provisions relating to the method of holding such hearings are contained in the 1934 ordinance; and the said ordinance extends the expiration date of the 1934 ordi-

nance to December 31, 1945. It further provides that nothing in it should be construed to abrogate or modify the ordinance of May 18, 1934 except insofar as it is inconsistent with such ordinance. The ordinance of 1937 as an amendment to the ordinance of 1934 would operate precisely as if this amendment had been added to the prior ordinance at the time of its adoption. Holbrook v. Nichol and Prettyman, 36 Ill. 161.

In order to determine the true meaning and extent of the powers and rights intended to be granted or conferred by the 1937 ordinance, it is necessary to consider the nature of the rights and privileges dealt with in the 1934 ordinance, and the 1937 ordinance can only be understood by considering the rights previously granted and their nature and extent.

The original ordinance of 1934 was a contract ordinance which by its very terms had a fixed expiration date, which date was by appropriate ordinances continued from time to time to December 31, 1951. The ordinance, it is true, contained provisos with reference to the termination and revocation by the Public Vehicle License Commissioner of licenses which were therein granted, but these provisos only were that such licenses could be revoked in case the contract licensees violated specific provisions of such ordinance. In Yellow Cab Company v. City of Chicago, supra, it is pointed out that at the time the 1937 ordinance was passed all taxicab licenses in the city of Chicago, by the terms of the 1934 ordinance as amended, did not expire until December 31, 1940, and that therefore the city of Chicago could not legally at that time reduce the number of taxicab licenses in the city by general ordinances. The ordinance of 1937 provided for a method of voluntary surrender by the contract licensees to reduce the number of licenses issued under the 1934 ordinance to 3,000, and as a consideration for such voluntary surrender of licenses it provided that the number of licenses so surrendered should first be issued to licensees under

315

the 1934 ordinance ratably in proportion to the number voluntarily surrendered by each such licensee, and that the authority of said licensees to operate taxicabs under the 1934 ordinance be extended to December 31, 1945 provided the licensees accepted the terms of the 1937 ordinance. The 1937 ordinance was accepted by the intervenors.

██ At the time the ordinance of 1934 was passed the city had power to regulate public transportation on its streets and to make reasonable provision therefor under the authority conferred upon it by the statute. It saw fit to pass a comprehensive contract ordinance, which intervenors accepted, and which had all the essential elements of a contract between the city and the intervenors. The intervenors accepted it as a term ordinance, the date of expiration being specifically set forth therein. The ordinance of 1937 amended that ordinance because of the then existing conditions, and the intervenors surrendered certain licenses. If the ordinance of 1937 had not been passed and accepted by the intervenors, the ordinance of 1934 as amended would have expired under its terms in 1940. At that time any and all rights acquired by the intervenors under and by virtue of that ordinance would have terminated. The only right that the intervenors had to the taxicab licenses held by them was under and by virtue of that ordinance. When they surrendered their licenses at the time of passage of the 1937 ordinance, they surrendered licenses which they had received by virtue of the 1934 ordinance and which were to terminate at a specified time. The contract between the city and the intervenors as set out in the 1937 ordinance provided that since certain licenses had been surrendered by the intervenors so as to reduce the number of taxicabs operating on the streets of Chicago to 3,000, no increase should be made except upon a hearing as to public convenience and necessity by the commissioner and a preference given to the surrenderees to

the number of the licenses at that time surrendered by them, and their right to operate taxicabs on the streets of Chicago under the provisions of the original ordinance of 1934 was extended to 1945. The ordinance of 1937 dealt solely with the licenses which the intervenors were given under the 1934 ordinance and it did not extend the termination date of any licenses either then issued to the intervenors or which might in the future be issued to them, except by extending the termination date of the 1934 ordinance. The 1937 ordinance gave no other additional rights to the intervenors beyond those given by the ordinance of 1934 as amended, but it did provide for future prior consideration of the intervenors with reference to the surrendered licenses if additional licenses were issued under the 1934 ordinance. As we pointed out, the licenses which they surrendered were to expire in 1940. If conditions existed and if it had been found by the Public Vehicle License Commissioner in compliance with the 1937 ordinance that additional taxicab licenses over the number of 3,000 should be issued in the city of Chicago, the licenses which would have been restored to the intervenors would also have expired in 1945, the date to which the 1934 ordinance had been extended, or at any other termination date for the 1934 ordinance which the city council might have later fixed. There was no extension of any rights of the intervenors beyond the date of expiration of the comprehensive ordinance of 1934 as amended. The argument of the intervenors, followed to its logical conclusion, would require a finding that by the ordinance of 1937 and its acceptance by intervenors, the city irrevocably and forever gave up all rights held by it under the Cities and Villages Act to increase the number of taxicabs on the streets of the city of Chicago until it had first restored to the intervenors the licenses which they had surrendered. However, as we have said, any licenses restored by virtue of the 1937 ordinance would necessarily end at the termination

317

date of the 1934 ordinance. The two ordinances must be construed and considered together. The provisions of the 1937 ordinance have no force or validity beyond the expiration date of the 1934 ordinance, and both that ordinance and the 1937 ordinance ceased to exist after December 31, 1951. Nothing said in Yellow Cab Co. v. City of Chicago, supra, would lead to any other conclusion.

We are in full accord with the contention of the intervenors that there is no ambiguity or obscurity in the ordinances. Examining the ordinances in the light of the conditions existing at the time when they were passed there can be no doubt it was the understanding of both the city and the intervenors that the 1937 ordinance was an amendment to and dependent upon the 1934 ordinance.

The termination dates of the 1934 ordinance and the 1937 ordinance were extended from time to time by ordinances of the city council on June 26, 1945, December 29, 1950, March 2, 1951, June 14, 1951 and September 20, 1951, and each of those ordinances extending the date of the expiration of the 1934 ordinance also extended the date of the expiration of the 1937 ordinance. In one instance the extension was accomplished by an amendment of the clause of the 1937 ordinance extending the ordinance of 1934. In three instances it was done by an extension of the ordinance of May 18, 1934 "as amended by an ordinance passed December 22, 1937."

In 1950 the city entered into negotiations for the enactment of a new comprehensive contract ordinance. It passed a regulatory ordinance which went into effect on January 1, 1952, and which was intended to bridge the gap between the expiration of the contract ordinance of 1934 on December 31, 1951 and the adoption and acceptance of a new contract ordinance. A contract ordinance was passed by the city council on Jan-

uary 30, 1952 which was not accepted by the requisite number of taxicab licensees in the city of Chicago as therein provided, and consequently did not become effective. The regulatory ordinance which went into effect January 1, 1952 continued to be the only controlling ordinance dealing with taxicabs in the city of Chicago. This ordinance was effective on the date of the filing and the determination of the mandamus action before us, and the terms of that ordinance—and no other—control the instant litigation.

▮ The intervenors argue strenuously that the 1946 injunction order is still in full force and effect since no motion was made to modify, vacate or dissolve it in the case in which it was issued. This contention results from the misapprehension of the effect of that injunction. The injunction was originally issued by the Circuit Court to prevent the city of Chicago from interfering with the contract rights which the intervenors had under the 1934 and 1937 ordinances, or, as was said by the Supreme Court in Yellow Cab Co. v. City of Chicago, supra, the injunction "merely restricts the action of the city and the license commissioner, the city clerk and the mayor from taking certain action in the nature of enforcing ordinances or resolutions previously adopted by the city council." The injunction depended solely upon the continued existence of the 1934 ordinance and the mandatory 1937 ordinance. When they expired the injunction expired with them. The use of the word "forever" in the injunction means nothing more than that the trial court had entered a permanent injunction, which permanent injunction was dependent upon the contract and ended when the contract ended. As the Supreme Court, in City of Quincy v. Bull, 106 Ill. 337, said (p. 352) :

"An objection is taken to the form of the decree in the respect of the duration of the injunction, it being made perpetual. We think the decree must be con-

319

sidered with reference to the claim of right which is made, and that the fair construction of the injunction is, that it is coextensive with the existence of the rights granted by the ordinance of August 7, 1873, and has no further extent."

See also Preble v. Architectural, Union, supra. When the contract rights which the injunction decree implemented ended, the injunction had no further effect and no motion to vacate or to modify was necessary.

The regulatory ordinance passed December 20, 1951, which went into effect January 1, 1952 (chapter 28, Municipal Code), provided that all licenses for public passenger vehicles issued for the year 1951 which have not been revoked or surrendered prior to the time when such licenses for the year 1952 shall have been issued may be renewed from year to year subject to the provisions of that chapter. This gave the right to the Public Vehicle License Commissioner to issue licenses both to the intervenors and to such other taxicab operators as had been licensed for the year 1951. Such licenses would be issued under and by virtue of the ordinance which went into effect January 1, 1952 and not under any other ordinance. They were new licenses and not a continuation of licenses previously held under and by virtue of the contract ordinances. Since the effect of the injunction order of 1946 had ceased, and since the 1934 contract ordinance as amended by the 1937 ordinance expired on December 31, 1951, the intervenors had no property rights to protect which would give them the right to intervene in the suit before us.

 One of the intervenors here argues that if it were held that the 1937 contract ordinance had expired on December 31, 1951 and if the injunction decree of the Circuit Court entered in 1946 was held to have no force and effect, nevertheless the city would be required to issue licenses to the intervenors since they

were established in the field and were able to furnish such services. In support of their contention they rely on two cases: Chicago & West Towns Ry. Co. v. Illinois Commerce Com., 383 Ill. 20, and Black Hawk Motor Transit Co. v. Illinois Commerce Com., 383 Ill. 57. Both of those cases deal with public utilities and point out that the law in Illinois dealing with public utilities is based on the theory of a regulated monopoly rather than competition, and therefore before one utility is permitted to take the business of another already in the field it must be shown that the new utility is in a position to render better service to the public than the one already in the field. The power of the State to regulate a utility carries with it the power to protect such utility against indiscriminate competition. Chicago & West Towns Ry. Co. v. Commerce Com., supra. The taxicab business is not a public utility. People v. Thompson, 341 Ill. 166. Yellow Cab Co. v. City of Chicago, supra. The cases relied on do not apply to the case before us. In any event, the case was not tried on this theory in the trial court and hence this contention cannot properly be raised here. Fornoff v. Smith, 281 Ill. App. 232; Dillon v. Nathan, 10 Ill.App.2d 289; McFarland v. Town of Bourbonnais, 339 Ill. App. 328.

The Yellow Cab Company and the Checker Taxi Company, Inc. should not have been permitted by the trial court to intervene, nor should the plaintiffs' petition for a writ of mandamus have been dismissed. The judgment order of February 24, 1956 of the Circuit Court of Cook county finding the issues in favor of the defendants and dismissing the plaintiffs' suit for mandamus is reversed, and the cause is remanded to the trial court with directions to vacate its order of January 19, 1956 giving leave to Yellow Cab Company and Checker Taxi Company, Inc. to intervene in the original mandamus suit as parties defendant, to vacate its order of August 24, 1956 which vacated the judgment for the

writ of mandamus entered August 4, 1954, and to rein state the judgment entered by it on August 4, 1954 which ordered that the writ of mandamus issue.

Reversed and remanded with directions.

ROBSON, P. J. and SCHWARTZ, J., concur.