305 F.2d 675
 FLIGHT ENGINEERS' INTERNATIONAL ASSOCIATION, AFL-CIO, TWA CHAPTER, an unincorporated association, and H. S. Dietrich, Joseph C. Miller, R. Reed and Thomas E. Beck, Individually and as Officers of said Association, and as Representatives of the class consisting of the Flight Engineers employed by Trans World Airlines, Inc., Appellants,
v.
TRANS WORLD AIRLINES, INC., Appellee.
 No. 16931.
 United States Court of Appeals Eighth Circuit.
 June 28, 1962.
 
 John J. Manning, Kansas City, Mo., for appellants.
 Dick H. Woods, Kansas City, Mo., for appellee and John K. Bestor, Kansas City, Mo., and Harold L. Warner, Jr., New York City, and Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., Chadbourne, Parke, Whiteside & Wolff, New York City, on the brief.
 Before VOGEL and RIDGE, Circuit Judges, and DEVITT, District Judge.
 RIDGE, Circuit Judge.
 
 
 1
 This is an appeal from an order granting injunctive relief to Trans World Airlines, Inc. (TWA) primarily, forbidding a strike by the Flight Engineers' International Association, AFL-CIO, TWA Chapter (Flight Engineers) and four individuals who are Flight Engineers employed by TWA, and members and officers of the Union, until the processes and procedures of the Railway Labor Act (45 U.S.C.A. § 151, etc.) have in good faith been complied with. From our consideration of the record in this appeal, we do not reach the issues as presented by the parties because it is apparent that the decree appealed from was, at the time of the entry thereof, made in relation to a subject matter that had become moot, and for that reason alone this appeal must be dismissed.
 
 THE FACTS
 
 2
 On July 29, 1958, TWA and the Flight Engineers entered into a "Basic Bargaining Agreement" covering in detail rates of pay, rules, and working conditions of Flight Engineers employed by TWA, and applied the same to both piston (reciprocating engine) and jet (turbine engine) aircraft. That Basic Agreement by its terms was to continue in full force and effect until at least January 1, 1961.
 
 
 3
 On the same date July 29, 1958, the Flight Engineers and TWA entered into a "Letter Agreement" supplementary to the above Basic Agreement, which provided for participation by Flight Engineers in a training program to qualify for turbine-powered (jet) aircraft and the establishment of certain rights and obligations of Flight Engineers while being so trained and qualified. That Letter Agreement by its terms gave TWA and the Union the right to request changes therein one year after the date of the first scheduled (TWA) flight by serving written notice of intended changes as required by Section 6 of the Railway Labor Act (45 U.S.C.A. § 156),[1] and affirmed that "in no event should this Letter Agreement be in effect past the expiration date of the Basic Agreement" namely, January 1, 1961. On February 12, 1960, the Flight Engineers served a Section 6 notice on TWA to open negotiations for a new Letter Agreement. February 16, 1960, TWA served a like notice on the Flight Engineers.
 
 
 4
 This litigation singularly revolves around changes sought to be made in the original Letter Agreement as proposed by the parties in the above notices. Tersely stated, the controversy is this: TWA contends that the Flight Engineers "have improperly failed to bargain in good faith" for a new Letter Agreement as they are required to do under Section 2, First, of the Railway Labor Act (45 U.S.C.A. § 152, First) because the Flight Engineers have incorporated in their Section 6 notice, matters not subject to mandatory bargaining. More specifically, TWA contends that the proposals incorporated in the Section 6 notice served by the Flight Engineers included a demand that Flight Engineers should not be required to take training (ground school, simulator, transition and line flight) under any curriculum not mutually agreed to by the Company and the Flight Engineers. As to that matter, TWA claims the Flight Engineers' proposal seeks to fix the amount of training to be given Flight Engineers, and to require the training be given under the supervision of a "Flight Engineer" instead of the course of training required by rules and regulations of the Federal Aviation Agency and as originally set up by TWA; that the proposed subjects of intended changes do not concern "rates of pay, rules, and working conditions" within the ambit of the Railway Labor Act, supra, or the original Letter Agreement, and therefore they are not subjects of mandatory bargaining for a new Letter Agreement under the Act, supra; that the Flight Engineers have improperly and unlawfully failed to bargain in good faith as they are required to do by the Railway Labor Act, because of their insistence that agreement be reached as to those subjects as a condition precedent to any changes to be made in the original Letter Agreement; and the Flight Engineers, in threatening to strike because TWA would not accede to such proposals, are doing so in violation of Section 2, First, of the Railway Labor Act, supra, and Section XXIII (H) of their Basic Agreement with TWA.[2]
 
 
 5
 The Flight Engineers made specific denial of allegations to the above effect contained in TWA's complaint and affirmatively alleged in their answer that the complaint "fail(ed) to state a claim against defendants upon which relief (could) be granted" and that the District Court "lack(ed) jurisdiction over the subject matter of the complaint because of the provisions of the Norris-La Guardia Act, 47 Stat. 70, as amended, 29 U.S. C.A. 101-115."
 
 
 6
 After hearing in the District Court, an injunction decree was entered in this case on September 29, 1961. That was at a time after expiration of the effective period of both the Letter Agreement and the Basic Agreement, supra. Timely appeal from such decree was perfected to this Court on October 18, 1961. During the pendency of this appeal, by leave of this Court, appellants filed a "Motion to Modify (the) Permanent Injunction Order of (the) District Court."[3] In that motion appellants alleged that by letters dated October 4, 1961 and October 24, 1961, addressed to TWA, they withdrew all the proposed changes specifically enumerated in TWA's complaint as non-bargainable subject matter and which was asserted by TWA not to be within the ambit of their original Letter Agreement. The decree of the District Court as entered in this case commanded the Flight Engineers to withdraw all such matter.[4] In their "Motion to Modify," the Flight Engineers stated that such withdrawal was made because the decree of the District Court as entered "restrained (them) from the exercise of their lawful right to strike for demands under a separate contract (i. e. the Basic Agreement) which was not the subject of the complaint in the court below" and it was for that reason they "move(d) this court that the Final Judgment and Decree of the (District Court) be modified during the pendency of this appeal." On January 18, 1962, this Court entered an order in "Partial Vacation of (the) Injunction Decree"[5] as entered by the District Court.
 
 
 7
 From the record before us these salient facts now clearly appear:
 
 
 8
 (1) The terms of the Letter Agreement, the subject matter of which gave rise to the dispute between these parties, by its terms expired on January 1, 1961, the same date as did the Basic Agreement, which covered all rates of pay, rules, and working conditions for Flight Engineers employed by TWA on both piston and jet aircraft.
 
 
 9
 (2) On October 26, 1960, prior to expiration of the Basic Agreement (on January 1, 1961) Section 6 "openers" were duly served by the Flight Engineers under the Railway Labor Act supra, which in effect opened up negotiations for a new Basic Agreement between TWA and the Flight Engineers in respect to all rates of pay, rules, and working conditions. The next day (October 27, 1960) TWA followed suit and served the Flight Engineers with Section 6 openers for a new Basic Agreement.
 
 
 10
 (3) The decree of the District Court as entered "restrained and enjoined" the Flight Engineers "pending their good faith withdrawal" of certain "proposals designated" by them, and from seeking changes in respect to the Letter Agreement only, "* * * pending their good faith compliance with and exhaustion of the processes and procedures of the Railway Labor Act, by exerting every reasonable effort to make and maintain agreement with (TWA) upon proposals truly germane to the subjects included in the Letter Agreement." (Emp. added.)
 
 
 11
 (4) At oral argument of this appeal we were informed by Counsel for the parties that negotiations for a new Basic Agreement as to "rates of pay, rules, and working conditions" had been carried on and conducted by TWA and the Flight Engineers in accordance with the provisions of the Railway Labor Act supra, as a consequence of the "openers" served by these parties as noted in item (2) infra * * * without agreement thereon * * * that the subjects of such negotiations for a new Basic Agreement had been submitted to a "Mediation Board" pursuant to Section 5 of the Railway Labor Act (45 U.S.C.A. § 155) without resolution of the dispute in relation thereto; and that efforts of the Mediation Board "to induce" the parties to this litigation "to submit their controversy to arbitration" had been futile.[6]
 
 
 12
 (5) Since oral argument was had in this appeal, we take judicial notice of the fact that a dispute presently exists between TWA and the Flight Engineers for a Basic Agreement as to "rates of pay, rules, and working conditions," and because thereof President Kennedy has created an "Emergency Board" as provided by Section 10 of the Railway Labor Act (45 U.S.C.A. § 160) to investigate and report to him respecting such dispute; and that the Emergency Board and the President are exerting every effort to have these parties amicably adjust their dispute by agreement upon terms for a new Basic Agreement.[7]
 
 
 13
 It is manifest from the foregoing that when the Basic Agreement between TWA and the Flight Engineers, covering all "rates of pay, rules, and working conditions" expired on January 1, 1961, the supplementary Letter Agreement thereto by its terms also lapsed and became nugatory. Thereafter, no justiciable issue could possibly exist between TWA and the Flight Engineers relating to the subject matter of that Letter Agreement. Under the Railway Labor Act, supra, any dispute that might, could, or did exist between TWA and the Flight Engineers regarding any subject of the supplementary Letter Agreement prior to January 1, 1961, thereafter, a priori, merged into or became matter subject to negotiation for a new Basic Agreement. When TWA and the Flight Engineers served their Section 6 openers under the Railway Labor Act, in respect to a new Basic Agreement, any subject of dispute that could or might arise under their former Basic Agreement, regardless of the form by which such matters might be raised, were then open for negotiations between them.
 
 
 14
 In its findings of fact in this case the District Court noted:
 
 
 15
 "— it appears perfectly clear that at least a substantial portion of"
 
 
 16
 the items proposed by the Flight Engineers for a new Letter Agreement:
 
 
 17
 "are the subject of collective bargaining under the Basic Agreement, except as it relates to the no-strike clause prior to January 1, 1961 (which) is not involved here."
 
 
 18
 Whether that be true or not we intimate no opinion thereon. All we say is that it clearly appears from such finding of the District Court that the subject matter on which the injunction in this case was impressed relates to things which are now open to bargaining between these parties for a new Basic Agreement, and clearly reveals that such injunction relates to matters that have long since expired so far as the Letter Agreement in this case can possibly be of concern to these parties.
 
 
 19
 "It is a firmly entrenched and fundamental principle of law that a cause is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, could not have any practical effect upon the then existing controversy * * * and neither the trial nor appellate courts will attempt to determine moot or pretended causes wherein it is demonstrated that there is no actual and real controversy involved, or in which no practical relief can follow a judicial determination of the controversy." (Western Auto Supply Co. v. Banner, etc., 288 S.W. 2d 402, 403 (Mo.App., 1956, Matthes, J.)).
 
 
 20
 From the terms of the injunction as issued in this case it is apparent that the mischief sought to be controlled thereby was in relation to matter that had long since expired. The injunction decree as entered "restrained and enjoined" the appellants from making proposals which the District Court found were not "germane to the subject matter of the * * * Letter of Agreement * * *" and required them to exert "every reasonable effort to make and maintain agreement with (TWA) upon proposals truly germane to the subjects included in the (original) Letter of Agreement."
 
 
 21
 The legal effect of granting such injunction was tantamount to restraining the Flight Engineers from breaching the original Letter Agreement after the expiration thereof and to compel negotiations regarding subject matter that had then lapsed so far as the original Letter Agreement between the parties was of concern to them. That injunctive relief cannot be used to create a right where no right exists is self-evident.
 
 
 22
 "An injunction restraining the breach of a contract has been held to constitute a negative specific enforcement of the contract. Ulrey v. Keith, 237 Ill. 284, 86 N.E. 696. In order for such an injunction to issue in the first place there must have been an existent right which was violated. The injunction is co-extensive with that right. When the right ceases, by expiration of time fixed in the contract or otherwise, the injunction also ceases to have any force or power. It becomes functus officio." People etc. v. Flynn, 14 Ill.App.2d 301, 144 N.E.2d 747.
 
 
 23
 Hence it appears that at the time of entry of the injunction herein it was impossible for the Flight Engineers to comply therewith, or for the court below to grant effectual relief on the issues as framed by the pleading in the case at bar. If we should decide this appeal in favor of appellant, such affirmance would likewise be ineffectual.
 
 
 24
 As said by the Supreme Court of the United States, in Local No. 8-6, Oil, Chemical and Atomic Workers International Union, AFL-CIO, et al. v. Missouri, 361 U.S. 363, 367, 80 S.Ct. 391, 394, 4 L.Ed.2d 373 (1959):
 
 
 25
 "Because (the) injunction (in this case) has long since `expired by its own terms,' we cannot escape the conclusion that there remains for this Court no `actual matters in controversy essential to the decision of the particular case before it.' United States v. Alaska S.S. Co., 253 U.S. 113, 116, [40 S.Ct. 448, 64 L.Ed. 808]. Whatever the practice in (other courts might be) the duty of this Court `is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' Mills v. Green, 159 U.S. 651, 653, [16 S.Ct. 132, 40 L.Ed. 293]. See [Amalgamated Ass'n of Street Electric Railway & Motor Coach Employees, etc.] Bus Employees v. Wisconsin Board, 340 U.S. 416, [71 S.Ct. 373, 95 L.Ed. 389]. To express an opinion upon the merits of the appellants' contentions would be to ignore this basic limitation upon the duty and function of the Court, and to disregard principles of judicial administration long established and repeatedly followed." (Par. added to.)
 
 
 26
 The question of mootness was briefed by counsel for these parties before the District Court, but no ruling was made on that issue. We have had recourse to the briefs so filed by them.[8] Hence there was no reason to call for briefs on that issue in this Court.
 
 
 27
 The injunction decree of the District Court is vacated, without considering any question appearing in the record or as discussed by counsel.
 
 
 28
 This appeal is dismissed.
 
 
 
 Notes:
 
 
 [1]
 The reason for the Letter Agreement was that jet aircraft was not on July 29, 1958, a regularly-established service of TWA, but it was then contemplated that such would become a regular service within a few months thereafter. There were a lot of things that TWA and the Flight Engineers did not have actual experience with, concerning the work complement of jet service. Hence the Letter Agreement was entered into to cover training and work of TWA Flight Engineers on jet aircraft. It is fair to say that at the time of entering into the Letter Agreement the parties were of a mind that there would be quite a few changes to be made covering TWA Flight Engineers' duties and service on jet aircraft; and both parties would probably want to make changes in the subject matter of the Letter Agreement as the result of a year's experience
 
 
 [2]
 45 U.S.C.A. § 152, First, provides:
 "It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof."
 Section XXIII (H) of the Basic Agreement between these parties provides:
 "It is hereby understood and agreed that the Company will not lock out any employee covered by this Agreement, and the Association will not authorize any strike or picketing of the Company premises during the life of this Agreement, until the procedure for settling disputes as provided herein and as provided by the Railway Labor Act have been exhausted."
 
 
 [3]
 Leave for such extraordinary procedure was granted because of the sudden death of the Honorable R. Jasper Smith, District Judge who entered the decree below, and there was no District Judge in the Western District of Missouri to whom a remand could be made for the purpose of passing on such motion. A panel of this Court, specially convened, heard and considered such motion and appellee's objection thereto
 
 
 [4]
 The pertinent injunctive parts of the decree are as follows:
 "Defendants and each of them, their officers, representatives, agents, servants, employees and attorneys, all members of the Flight Engineers' International Association, AFL-CIO, TWA Chapter, and all of plaintiff's employees of the class or craft represented by said Association, and all persons acting in concert or participating with them be, and they hereby are, restrained and enjoined, pending their good faith withdrawal of their April 15, 1960 proposals designated as Sections II (3) (4), III, IV, V (5) (6) (7) (8) (9) (12), VI, VII and VIII and pending their good faith compliance with and exhaustion of the processes and procedures of the Railway Labor Act by exerting every reasonable effort to make and maintain agreement with plaintiff upon proposals truly germane to the subjects included in the July 29, 1958 Letter of Agreement; viz., their April 15, 1960 proposals designated as Sections I, II (1) (2) (5) (6) (7), V (1) (2) (3) (4) (10) (11), IX and X, from:
 "(a) Authorizing, causing, conducting, or engaging in, or attempting to engage in, any strike, partial strike, work stoppage, slowdown or curtailment of work performed for plaintiff, picketing of plaintiff's premises or from refusing to act as flight engineers on aircraft operated by plaintiff or to perform other flight engineering services assigned to them by plaintiff in the operation of its air transportation system."
 
 
 [5]
 The order ruled:
 "That the prohibition and restraint under the District Court's decree deriving from that part of Paragraph No. 7 of said decree set out in subparagraph (1) hereof, supra, is hereby lifted and vacated, so that the prohibition and restraint predicated on this condition shall no longer be operative against the defendants.
 "That the foregoing lifting and vacating shall be without effect during the pendency of the appeal, upon the prohibition and restraint imposed by Paragraph No. 7 of the decree under the conditions of sub-paragraph (2) hereof, supra, and as those conditions may have intended meaning from the District Court's findings and conclusions * * *. * * * The propriety or impropriety of the findings and conclusions as made by the court is, of course, a question for consideration and determination on the merits of the appeal."
 
 
 [6]
 A Court of Appeals may consider facts which are admitted in argument and in briefs on appeal. Kalimian, et al. v. Liberty Mutual Fire Insurance Co., 330 F.2d 547, (2 Cir. 1962)
 
 
 [7]
 That we may take judicial notice of that factual matter, see National Labor Relations Board v. Jones & Laughlin, 301 U.S. 1, 41 etc., 57 S.Ct. 615, 81 L.Ed. 893; 20 Am.Jur., Evidence, § 44, p. 67, and cases there cited
 
 
 [8]
 A Court of Appeals may take judicial notice of the record made in District Court in an action pending before it on appeal. Kalimian, et al. v. Liberty Mutual Fire Insurance Co., supra