Fay HEASLEY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17076.

United States Court of Appeals Eighth Circuit.

Jan. 16, 1963.

642

Leo J. Beauclair, of Lyons & Beauclair, Valley City, N. D., for appellant.

John O. Garaas, U. S. Atty., Fargo, N. D., for appellee.

Before JOHNSEN, Chief Judge, and MATTHES and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

Appellant, having been sentenced to eighteen months' imprisonment for criminal contempt, prosecutes this appeal claiming his judgment and sentence are illegal and void because—(1) the temporary injunction which he violated was no longer in full force and effect and therefore he was improperly adjudged to be in contempt of a null and void order of the District Court; (2) his eighteen months' sentence is excessive and unusual and should be materially reduced; (3) the District Court presiding Judge was prejudiced against him and should have disqualified himself, and (4) the State of North Dakota improperly joined with the United States Government "to eject appellant from the farm land" hereinafter mentioned. Since we deem appellant's first point well taken and as compelling our reversal of the District Court's order here on appeal, we pretermit any ruling on his other assignments of error.

The factual background leading up to appellant's conviction and sentence, tersely stated, is as follows. On May 22, 1958, the United States commenced an action against appellant and others, in the United States District Court for the District of North Dakota, to foreclose federal income tax liens on all real and personal property owned by appellant and for the appointment of a receiver to take charge and custody thereof. In due course a receiver was appointed for that purpose. On March 6, 1959, the District Court, by memorandum opinion publish-

ed at 170 F.Supp. 738, directed that judgment be entered adjudicating and impressing the Government's tax lien in the sum of $198,198.92 on specifically described real estate and personal property owned by appellant; adjudging the rights and interests therein of those joined as defendants in the action; and ruling that the Government was entitled to have appellant's real property sold by its receiver and the proceeds therefrom applied first toward satisfaction of appellant's outstanding income tax liabilities, and the balance to be otherwise distributed. Appellant's appeal from that judgment was dismissed by this Court for want of prosecution. Heasley v. United States, 272 F.2d 947.

In conformity with the above-mentioned judgment the District Court's receiver sold appellant's real estate. On March 24, 1960, an order was entered confirming such sale to Arvel Glinz and Marjorie Glinz, husband and wife, for a total consideration of $225,300.00, payable $45,-300.00 in cash and the balance to be paid in installments over a period of five years, the unpaid balance to be evidenced by promissory note payable to the Government and appellant and secured by mortgage on said real estate.

April 8, 1960, an Amended Order of Confirmation was entered by the District Court, adjudicating among other things that the proceeds derived from the receiver's sale be applied first to satisfy the costs of administration; secondly, to the payment in full of the Government's tax lien, and, thirdly, the balance thereof be paid to appellant. By another order of the same date the District Court released certain personal property belonging to defendant from the force and effect of the Government's lien for income taxes. On the same date (April 8, 1960), an "Amended Order Confirming Sale" was entered by the District Court by which the Receiver was ordered to deliver to

the Glinzes "a deed conveying and transferring to" them title to "the real property sold." In that order the "defendants" (including appellant) were directed "to deliver possession of the—real property to the"—Glinzes; that the Glinzes were "the owners absolute in fee simple title of (such) real estate"—and "that none of the defendants named in (that) action (had) any estate or interest in, or lien or encumbrance (thereon)—and each and every one of them (were thereby) enjoined and forever debarred from further asserting" any such interest. The Glinzes were accordingly put into possession of said real estate. Three appeals perfected to this Court from the above amended orders were with finality adjudicated and determined on October 24, 1960, by our opinion to be found at 283 F.2d 422.

During the pendency of the last-mentioned appeals the Government, on August 5, 1960, filed a verified complaint in the District Court, seeking ancillary injunctive relief against appellant and others named as defendants in the tax-lien-receivership proceedings "pending the determination of the *appeals*" *ante*, and to enjoin them "from conveying or attempting to convey any of the realty" in question "or in any manner whatsoever, attempting or threatening to take possession of said realty or to dispossess the purchasers thereof; from trespassing upon said realty and from interfering in any manner whatsoever with the peaceful possession of said realty by" the Glinzes "or with their farming operations."[1] On motion of the Government, without notice to appellant or others named as defendants therein, the District Court, to protect its "jurisdiction over the *res*" in the tax-lien-receivership action, issued a temporary restraining and show cause order, returnable on August 5, 1960. On the return date thereof a written stipulation entered into between counsel for the Government and

1. It is here noted that the Glinzes, the purchasers of the real estate at the receiver's sale, were not named parties in that action, nor were they parties in the tax-lien-receivership action.

defendant was filed in the District Court, reciting in pertinent part as follows:

"* * * that the Court may enter its preliminary injunction herein, without notice, restraining the Defendants, and each of them, their agents, servants, employees, and attorneys, and all persons in active concert and participation with them, from hereafter conveying or attempting to convey any of the realty described in the Complaint herein, except in pursuance to an Order of this Court, or any other court of competent jurisdiction from attempting or threatening to take possession of said realty, from attempting to dispossess the purchaser thereof, or from trespassing upon said realty, or interfering in any manner whatsoever with the peaceable possession thereof of Arvel and Marjorie Glinz, or their farming operation thereon, except pursuant to the judgment or Order of this Court or another court of competent jurisdiction."

As a consequence and solely on the recitals of that stipulation a preliminary injunction was entered by the District Court on August 12, 1960, restraining and enjoining the defendants accordingly.

It appears from the original files of the District Court lodged with us in connection with the instant appeal, that subsequent to our affirmance of the District Court's order confirming the receiver's sale, infra, that Court, under date of February 17, 1961,[2] over the objection of the defendants, undertook to enter of record an "Order Continuing (the) Preliminary Injunction" of August 12, 1960, supra, in force "pending further order of (that) Court." Apparently the last-mentioned order was entered on oral motion made in open court without amendment of pleadings or the hearing of any evidence, as no supporting papers, transcript of testimony, findings of fact, or conclusions of law, as required by Rules 52 and 65, F.R.C.P., appear in the records of the District Court to support the action then so taken. The restraining part of that "Order Continuing Preliminary Injunction" was substantially in form as that quoted, supra.

It was thereafter, on April 30, 1962, that appellant went upon a quarter-section of the land conveyed to the Glinzes, with a tractor and a six-bottom plow and plowed up a feed-lot and then went upon some summer-fallowed land and started plowing thereon. It is not deemed necessary that we relate all factual matter appearing in the record concerning "this trespass."[3] It is sufficient to

2. The decisive date to the question of jurisdiction herein decided, as the mandate of this Court in accordance with our opinion in United States v. Heasley, 283 F.2d 422, would have in due course been filed in the District Court on or about November 15, 1960.

3. It appears from the record before us that prior to "this trespass" appellant had been arrested and convicted of malicious mischief in the County Court of Stutsman County, North Dakota, for his interference with the farming operation of the Glinzes and that at the time of his citation for criminal contempt in·the case at bar he was under a peace bond to that County Court, conditioned in part upon his staying away from the Glinzes on their property.

It also appears in the record here that appellant's citation for contempt in the

case at bar was, in part, induced by law enforcement officials of North Dakota because they considered the "trespass laws" of that state "are so weak" that the same would not be a deterrent to appellant's further "trespass on the property of the Glinzes and interfering with their farming operations thereon." The State's Attorney of Stutsman County, North Dakota, the Sheriff of that County, as well as the District Court's receiver, were present and observed "this trespass" made by appellant and testified as witnesses thereto on behalf of the Government in this contempt proceeding.

For applicable North Dakota Statutes, see § 12–41–10; § 12–41–11; and § 4–24–02, Century Code, Annotated, of that State. The more powerful federal mandate for federal criminal contempt is, of course, Chapters 21 and 233, Title 18, U.S.C.A.

say that as a consequence thereof the United States Attorney for the District of North Dakota filed an affidavit in the District Court, praying that appellant be cited to show cause why he should not be held and adjudged in contempt and be punished by a fine or imprisonment therefor. Thereafter, on the same date, an order was issued by the District Court commanding appellant to appear in that Court on May 4, 1962, to show cause why he should not be held in contempt. At the same time, a writ of attachment for the body of appellant was issued, directing that he be taken "before a United States Commissioner for the purpose of giving either a cash or corporate surety bond in the amount of $50,000.00 for his appearance" in that Court "on the return date of said Order to Show Cause." Appellant was arrested on May 1, 1962, pursuant to that writ of attachment, taken before a United States Commissioner and "committed to the Cass County (North Dakota) Jail in default of bond."

Thereafter, on May 4, 1962, a hearing was held on appellant's citation for contempt before the District Court. The proof adduced by the Government at that hearing related solely to the fact of the single "trespass" last-above-mentioned, made by appellant upon the land of the Glinzes. No other matter was then put in issue. After hearing the evidence the District Court on the same date announced and entered of record the following "Memorandum and Verdict":

"This is a proceeding in criminal contempt. By affidavit filed by the Assistant United States Attorney for this District, Gordon Thompson, on April 30th, 1962, it was recited, among other things, that heretofore on the 12th day of August, 1960, this Court issued a temporary restraining order in an action entitled, 'United States of America versus Paul Heasley and Selma Heasley, Civil No. 3812,' which restraining order, among other things, provides it is 'ORDERED AND ADJUDGED that the Defendants, and each of them, their agents, servants, employees, and attorneys, and all persons in active concert and participation with them, are hereby restrained and enjoined, pending the further order of this Court, from hereafter conveying or attempting to convey any of the realty described in the Complaint herein, except in pursuance to an order of this Court, or any other Court of competent jurisdiction from attempting or threatening to take possession of said realty, from attempting to dispossess the purchasers thereof, or from trespassing upon said realty, or interfering in any manner whatsoever with the peaceable possession thereof of Arvel and Marjorie Glinz, or their farming operations thereon, except pursuant to the judgment or order of this Court or another Court of competent jurisdiction.'

"The record discloses such preliminary injunction was personally served upon Fay Heasley September 7, 1960, and that thereafter said preliminary injunction, was continued by order of this Court dated February 17, 1961, and the record discloses the order continuing the preliminary injunction was served on Fay Heasley February 27, 1961. The preliminary injunction referred to is still, of course, in full force and effect, never having been vacated or modified. The Government has alleged also that in open defiance of the preliminary injunction referred to, that on April 30th, 1962, Fay Heasley trespassed upon the realty described in the Complaint, specifically upon the southeast quarter of Section 24, Township 138, Range 66, Stutsman County, North Dakota, which land was owned by Arvel Glinz and his wife, and that said Fay Heasley plowed on the said described realty with a D–7 caterpillar and a six bottom John Deere plow.

"The Government by Assistant United States Attorney Thompson's

affidavit asked the Court for an order requiring Fay Heasley to appear in court in person and show cause why he should not be held and adjudged in contempt of this Court in view of his alleged contemptuous and obstructive conduct.

\* \* \* \* \* \*

"There is but one issue before the Court today and that is whether the temporary injunction referred to was served upon Fay Heasley and whether he has wilfully, defiantly and contemptuously disobeyed the injunction.

"From the evidence adduced upon the hearing held this date and after hearing the arguments of counsel, it is very clear to this Court that service was properly made upon Fay Heasley of the preliminary injunction which was served upon him September 7, 1960, and that he was properly served with an order continuing the preliminary injunction dated February 17, 1961, by being personally served with that order on February 27, 1961. The preliminary injunction from its inception was, and now is in full force and effect, and was in full force and effect on April 30th, 1962, at the time of the alleged violation.

"The Court, of course, takes judicial notice of its own records and proceedings and those of the Eighth Circuit Court of Appeals to which the alleged contemnor Fay Heasley, has been a party.

"The Court is of the opinion that the United States has, by overwhelming evidence, borne the burden imposed upon it by clearly showing that Fay Heasley well knew he was flouting the proper orders of a United States District Court and that he wilfully, contemptuously and defiantly disobeyed those orders when he deliberately, after having been repeatedly warned, entered upon the premises of Arvel Glinz and plowed his land in complete and utter defiance of the proper orders of the United States District Court.

"Fay Heasley, for deliberately violating the terms of the preliminary injunction, in going in and upon the land of Mr. and Mrs. Arvel Glinz and plowing it up, which the evidence discloses you did knowingly, wilfully, contemptuously and defiantly, I find you guilty of criminal contempt of court.

"Dated at Fargo, North Dakota, this 4th day of May, A.D., 1962."

It should here be pointed out that in the above "Memorandum and Verdict" there is a total absence of any statement or findings on the part of the District Court as to the ancillary jurisdictional premise of the temporary injunction order first issued by it in the tax-lien-receivership proceedings. All that is recited therein, from jurisdictional aspects, is that a "preliminary injunction" was originally issued by it and personally served upon appellant; that thereafter said preliminary injunction was continued in force by order of that Court dated *February 17, 1961,* and that the record discloses that the order continuing the preliminary injunction was served on Fay Heasley on February 21, 1961. Hence the statement is made that "(t)he preliminary injunction referred to is still, of course, in full force and effect, never having been vacated or modified."

From the affidavit of the United States District Attorney, the District Court's citation order, and the "Memorandum and Verdict," *ante,* it is made manifest that the Government in this criminal contempt proceeding has assumed, and the District Court has considered that the ancillary jurisdiction vested in it by the injunction proceedings commenced in that Court pending the determination of the appeals, infra, continued unabated and undiminished over all the *res* acquired by it in the tax-lien-receivership proceedings; that it had power and authority to find appellant guilty of contempt of its injunctive order of *February 17, 1961,* when it found appellant had

committed a "trespass" upon the land of the Glinzes on April 30, 1962, and that such jurisdictional matters were not open to questioning by appellant. From our consideration of the record before us, we do not believe that appellant's conviction and sentence for criminal contempt can be sustained from such an inconclusive and uncertain finding as to the jurisdiction, power and authority of the District Court to proceed against appellant and convict him for criminal contempt within Fifth Amendment concepts of due process of law.

 From the record here, this salient fact stands out in bold relief: The injunction order originally issued by the District Court on August 12, 1960, could only have had ancillary relation to the relief sought and granted by the District Court in the tax-lien-receivership proceeding commenced by the Government. It must be borne in mind that the totality of that jurisdictional aspect of the injunction order so far as the receiver's sale of the land here to be considered could be involved, was "to maintain the status quo" of the District Court's "Order of Confirmation of Sale" and protect that "Court's jurisdiction over the *res*" involved in the tax-lien-receivership during the pendency of the appeal, infra, then pending in this Court. That being so, it is seen that upon affirmance by this Court of the "Order of Confirmation of Sale" and the going down of our mandate, "fee simple title" and "possession of the land" in question was with finality vested in the Glinzes as ordered and directed in that order and thereafter the only *res* remaining within the jurisdiction of the District Court in the tax-lien-receivership action so far as the land in question could be involved, was in relation to the note and mortgage, infra, and certain personal property then held in possession by its receiver. This is made manifest when the legal effect of the receiver's sale of the farm land in question, as affirmed by this Court, is fully apprehended.

In 75 C.J.S. Receivers § 257, p. 885, it is said:

"By virtue of being a party to the receiver's sale, a purchaser submits himself to the jurisdiction of the court under whose order the sale is made, but ordinarily the court loses jurisdiction of the purchaser as such, as well as the property purchased, as soon as the sale is approved and completed * * *." (citing cases)

(unless)

"The court (has retained) jurisdiction of the property for the purpose of enabling it to make and enforce orders with respect to the receiver's indebtedness." (citing cases.)

No such retention of jurisdiction is to be found in the "Order of Confirmation" entered by the District Court, as affirmed by this Court in the tax-lien-receivership proceedings. In fact, by that order the District Court directed, as by way of a "writ of assistance," that the Glinzes be put into possession of the land sold at its receiver's sale and it is made manifest therein that it was the intention of the District Court to vest "fee simple title" thereto in the Glinzes. Cf. Berry v. Harrell, 83 F.2d 671 (5 Cir. 1936), cert. den. 299 U.S. 559, 57 S.Ct. 21, 81 L.Ed. 411 (1936); 45 Am.Jur. "Receivers" § 402, etc., pp. 312–314; 75 C.J.S. Receivers § 258, pp. 885–886. Such is and was the legal effect of our affirmance of that "Confirmation of Sale" order. Therefore, it is clear that after our affirmance of that order the District Court had no further authority, power or jurisdiction over the *res, qua* farm land, in the tax-lien-receivership proceedings. After the mandate of this Court was issued and lodged in the District Court in that action the Glinzes' right of title to and possession of said farm land was the same as that of any other citizen of North Dakota in respect to other land owned and situate in that State.

Therefore, when on *February 17, 1961*, the District Court undertook to enter the order continuing its *pendente lite* injunction restraining "trespass" upon the land sold to the Glinzes, there was no undisposed-of issue then pending before that Court respecting the *res, qua* farm land, in the tax-lien-receivership proceeding pending before it which could possibly be related to that subject matter. At that time, all authority, power and jurisdiction which the District Court had acquired in relation to such farm land in the tax-lien-receivership proceeding had become *functus officio*, i. e. it had exhausted and discharged its jurisdictional powers insofar as title and possession of the farm land had been involved in that action, and so far as the Government could be concerned therewith. For the District Court to reach out and undertake at that time to enter an injunction order relating to "right of possession" or "trespass" upon said land was, we think, for it to "travel outside its orbit" of jurisdiction "as to be merely usurping judicial forms and facilities." United States v. United Mine Workers, 330 U.S. 258 (concur. op. Mr. Justice Frankfurter, l. c. 309, 67 S.Ct. 677, l. c. 703, 91 L.Ed. 884).

> "An injunction (cannot) create a right. It merely protects the rights [a party already has] from unlawful or injurious interference. In thus preventing, it does not give a perpetual or vested right in the remedy, the law governing the injunction, or the effect of it. The plaintiff is not entitled to the same measure of protection at all times and under all circumstances. An injunction decree which is entered upon facts which are not of such a permanent character as to be substantially impervious to change, is both executory and ambulatory. It marches along with time." Illinois Cent. R. R. Co. v. Illinois Commerce Comm., 387 Ill. 256, at p. 272, 56 N.E.2d 432, at p 439.

As said in People ex rel. Hafer v. Flynn. 14 Ill.App.2d 301, 144 N.E.2d 747:

> "In order for an injunction to issue in the first place there must have been an existent right which was violated. The injunction is coextensive with that right. When the right ceases, by expiration of the time * * *, the injunction also ceases to have any force or power. It becomes *functus officio*."

Cf. Flight Engineers' International Ass'n, etc. v. Trans World Airlines, Inc., 305 F.2d 675, 680 (8 Cir. 1962); Sweeney v. Hanley, 126 F. 97 (9 Cir. 1903); Cianciarulo v. Caldarone, 69 R.I. 86, 30 A.2d 843, 845 (1943); Siemers v. St. Louis Elec. Terminal Ry. Co., 348 Mo. 682, 155 S.W.2d 130, 135 (1941); Montfort v. Korte, 100 F.2d 615 (7 Cir. 1938); Cyc.Fed.Proc. Vol. 14, p. 797, § 73.70.

■ True, as the Government here argues, in prosecutions for criminal contempt the question of jurisdiction is no defense for violation of an injunction order that has been merely erroneous or wrongfully issued in relation to the subject matter or *res* as to which the issuing court had jurisdiction. United States v. United Mine Workers, supra; Howat v. Kansas, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922); Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911). But the premise and theorem of that proposition is that if the court issuing the injunction had jurisdiction of the parties and the subject matter before it, or power and authority to at least decide whether it did or did not have jurisdiction thereover, then the exertion of injunctive power is merely erroneous and not without the jurisdiction of the issuing court.

■ We are very mindful of the rule laid down in the above-cited controlling authority as relied on by the Government in the case at bar. But we recognize that there is a clear exception thereto and it is that as quoted above from Mr. Justice Frankfurter's concurring opinion in the Mine Workers case, supra.

That legal concept was earlier expressed by Mr. Justice Miller, in Ex parte Fisk, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117 (1884) where it is said:

> "When, * * * a court of the United States undertakes, by its process of contempt, to punish a man for refusing to comply with an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing for contempt is equally void. It is well settled now, in the jurisprudence of this court, that when the proceeding for contempt in such a case results in imprisonment, this court will, by its writ of habeas corpus, discharge the prisoner." (1. c. 718, 5 S.Ct. 1. c. 726).

The same legal concept has been affirmed in many cases, federal and state, as is apparent from the "Annotation" found in 12 A.L.R.2d 1059, entitled "Right to punish for contempt for failure to obey court order or decree either beyond power or jurisdiction of (a) court or merely erroneous." The author of that annotation has so thoroughly exhausted present-day case law applicable to that subject, it would be superfluity for us to here undertake any restatement thereon. We cite, however, In re Green, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962).

To reduce this opinion to its material point, we think all that need be said in relation to the topic of the above annotation is that federal law is therein clearly shown to be established which sustains the proposition that when a contemnor is proceeded against under Rule 42(b), F.R.Cr.P., and it is determined that his conviction for contempt has resulted from a completely invalid or void order for want of jurisdiction over the subject matter, or the parties, or lack of authority or power of a United States District Court to enter it, as distinguished from an erroneous order of such a court, then statutory law as declared by the Congress in Chapters 21 and 233 of the Criminal Code, supra, comes into operation. Hence punishment for contempt committed out of the presence of a court must be in relation to a "lawful writ, process, order, rule, decree, or command" of a federal court. A totally invalid or void injunction order cannot be the premise of punishment for contempt by such courts.

■ The temporary injunction appellant is alleged to have violated in the case at bar ceased to be effective on the entry of final decree in the tax-lien-receivership proceeding. Cf. Sweeney v. Hanley, supra. That the District Court enjoined the parties defendant in that action from "transferring or attempting to transfer title" to the land in question, after vesting "fee simple" title thereto in the Glinzes, does not militate against the foregoing, nor can such be used as a premise for any retained jurisdiction by the District Court in the case at bar to punish as by way of contempt for "trespass" over the Glinzes' right of possession to the land in question. A mere act of trespass does not constitute taking possession of land. Cf. Round Mountain Lumber & Coal Co. v. Bass, 136 Tenn. 687, 191 S.W. 341, 344. Nor does it affect the title to land.

■ Therefore, since the command of the injunction order of which the District Court in the case at bar held appellant to be in contempt, "was in excess" of that Court's "jurisdiction, so necessarily were the proceedings for contempt (for) not obeying" it. Ex parte Rowland, 104 U.S. 604, 617–618, 26 L.Ed. 861 (1881).

Appellant's conviction and sentence for criminal contempt is

Reversed.