In the Matter of the issuance of a subpoena upon Alfred K. STERN, a citizen of the United States of America, presently residing in Mexico.

In the Matter of the issuance of a subpoena upon Martha Dodd STERN, a citizen of the United States of America, presently residing in Mexico.

United States District Court
S. D. New York.
Nov. 12, 1964.

Rabinowitz & Boudin, New York City, for Alfred K. Stern and Martha Dodd Stern, Victor Rabinowitz, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for United States, John S. Martin, Jr., Asst. U. S. Atty., of counsel.

WEINFELD, District Judge.

These are motions by two contemnors, husband and wife, to vacate and set aside orders which adjudged them in contempt of this Court and fined each $25,000 for failure to appear before a Special Grand Jury in this District, in response to subpoenas served upon them in Mexico City, Mexico.

The movants, American citizens then resident in Mexico, were served with the subpoenas in February 1957, commanding their appearance before the Grand Jury in March 1957 pursuant to 28 U.S.C. § 1783, which then provided:

"§ 1783. Subpoena of witness in foreign country

"(a) A court of the United States may subpoena, for appearance before it, a citizen or resident of the United States who:

\* \* \* \* \* \*

"(2) is beyond the jurisdiction of the United States and whose testimony in a criminal proceeding is desired by the Attorney General."

The defendants appeared specially and moved, prior to the return day, to quash the subpoenas and the order which authorized their issuance upon the ground, among others, that the District Court lacked power under section 1783 to issue an extraterritorial subpoena for the appearance of a witness before a Grand Jury, and challenged both the order and the subpoenas as void for want of jurisdiction. The motions were denied and in due course, following the movants' failure to appear before the Grand Jury, they were found guilty of contempt of court and each fined. They then duly appealed to the Court of Appeals, which, upon the Government's showing that they had liquidated certain assets "in an effort to deprive the court of power to execute its mandate after judgment on appeal is affirmed," ordered the appeal dismissed unless the appellants deposited the amount of their fines and costs, or gave security for the payment thereof.[1]

The security was not deposited and the appeals were dismissed without consideration of the merits of the jurisdictional contention.

Several years thereafter, the precise issue presented by petitioner in urging that the reach of section 1783 did not extend to Grand Jury inquiry[2] was passed upon by our Court of Appeals in United States v. Thompson.[3] The Court held, upon facts substantially similar to those here presented, that the expression "criminal proceeding" as used in that section applied only to the trial of a criminal action or proceeding, and that neither it nor its predecessor, the Walsh Act of 1926,[4] enacted during the Teapot Dome era, was intended to apply to Grand Jury proceedings.

Shortly after the determination of the Thompson case, petitioners made this motion, which the Government opposes. First, it urges that the motion should be dismissed for noncompliance with the order of the Court of Appeals which conditioned their appeal from the contempt order upon the posting of security for the payment of the fines, unless the movants now deposit such fines or post security; second, that the District Court order adjudging petitioners in contempt is res judicata since movants had there contended that the Court was without jurisdiction to issue the extraterritorial subpoenas, and that petitioners waived their right to review the determination on the merits by reason of their failure to post the security as ordered by the Court of Appeals, which led to the dismissal of their appeal.

Neither contention is of substance. The Court lacked jurisdiction

---

1. Stern v. United States, 249 F.2d 720 (2d Cir. 1957), cert. denied, 357 U.S. 919, 78 S.Ct. 1360, 2 L.Ed.2d 1364 (1958).

2. Effective October 3, 1964, § 1783 has been amended and broadened to read: "(a) A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country \* \* \* if the court finds that particular testimony \* \* \* is necessary in the interest of justice, and, in other than a criminal action or proceeding, if the court finds, in addition, that it is not possible to obtain his testimony in admissible form without his personal appearance \* \* \*." 78 Stat. 995, Pub.L. No. 88–619, 88th Cong., 2d Sess. § 10.

3. 319 F.2d 665 (2d Cir. 1963).

4. 44 Stat. 835, formerly 28 U.S.C. §§ 711–713.

both over the person of the movants and of the subject matter. Each and every order entered, commencing with that authorizing the issuance of the subpoenas and their service upon movants in Mexico, was, under the then existing statute, void and beyond the authority or competence of the Court. As the Court of Appeals stated in Thompson, the District Court "was without power or jurisdiction to issue a subpoena requiring a citizen residing abroad to appear before a grand jury in this district."[5] In such circumstances the Court lacked power to punish movants for contempt and the order so adjudging them was void.[6]

Concededly, "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings."[7] And, as the Supreme Court indicated in the Mine Workers case,[8] a court with jurisdiction over the person may punish as criminal contempt any disobedience of an order designed to preserve the status quo pending determination of a substantial question with respect to its subject matter jurisdiction. And it is also recognized that nonjurisdictional errors committed at trial and not raised by appeal—because the trial rulings were "error" only in light of subsequent appellate decisions—are immune to collateral attack.[9] But this is not such a case—it fits none of these categories. Here the District Court never acquired jurisdiction over the person of the movants, nor did it have subject matter jurisdiction. No order was issued to preserve the status quo pending resolution of the jurisdictional challenge; the subpoenas were not designed for that purpose, but rather to compel movants' appearance and testimony before the Grand Jury.

■■ Nor is this a collateral attack. The movants, upon extraterritorial service of the subpoenas, appeared specially and forthwith challenged the jurisdiction of the Court. That their plea was erroneously rejected, as it now appears by the Thompson ruling, does not foreclose their right to relief. They are entitled to an order of vacatur in the very proceeding in which the void order and process were entered.[10] An order or decree issued by a Court beyond its authority and with respect to a person over whom it has no jurisdiction should not be permitted to stand. This would be so even were this a civil matter, where the considerations militating against finality are less weighty than in a criminal proceeding.[11] To grant such relief

5. United States v. Thompson, 319 F.2d 665, 670 (2d Cir. 1963).

6. In re Sawyer, 124 U.S. 200, 221–222, 8 S.Ct. 482, 31 L.Ed. 402 (1888); Ex parte Fisk, 113 U.S. 713, 718, 5 S.Ct. 724, 28 L.Ed. 1117 (1884); Ex parte Rowland, 104 U.S. 604, 617–618, 26 L.Ed. 861 (1881); Heasley v. United States, 312 F.2d 641, 648–649 (8th Cir. 1963). Cf. United States v. Shipp, 203 U.S. 563, 573, 27 S.Ct. 165, 51 L.Ed. 319 (1906) (dictum).

7. United States v. United Mine Workers, 330 U.S. 258, 293 & n. 58, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947).

8. Ibid.

9. Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947) ("That error did not go to the jurisdiction of the trial court."): United States v. Sobell, 314 F.2d 314 (2d Cir.), cert. denied, 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963).

10. Cf. Fed.R.Civ.P. 60(b) (4), which provides for the vacatur of a void judgment within a reasonable time. See also, Fed. R.Crim.P. 57(b):
"Procedure not Otherwise Specified. If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute."

11. The infirm grip which "conventional notions of finality of litigation" have when criminal judgments are subjected to post-conviction attack on the ground of "fundamental illegality" has been recently emphasized by the Supreme Court. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). As to civil matters, see Restatement, Judgments §§ 10–11 (1942).

offends no principle of res judicata or collateral estoppel, despite the authorities pressed by the Government, which are readily distinguishable. In Baldwin v. Iowa State Traveling Men's Ass'n [12] the defendant, who had appeared specially to dispute the Court's asserted jurisdiction over its person, made no effort to appeal from the adverse ruling; the Court asked to relitigate this "jurisdictional fact" was no more competent to do so than was the first; and subject matter jurisdiction was conceded. In Stoll v. Gottlieb [13] the Supreme Court held that a state court could not relitigate a Federal bankruptcy court's finding, in a matter over which it had personal jurisdiction, that it had competence to release a guarantor from his obligation. Again, the party seeking relitigation had not availed himself of orderly appellate process; and, said the Supreme Court, "There is no reason to expect that the second decision will be more satisfactory than the first." [14] Baldwin and Stoll cannot control the present case where the original orders were void for want of both personal and subject matter jurisdiction, where a "more satisfactory" determination—commanded by Thompson —can easily be made, and where—as it shall appear—movants' timely efforts to seek appellate review were frustrated by imposition of a condition upon their right of appeal. Finally, the vitality of the habeas corpus cases [15] cited by the Government in support of the proposition that res judicata applies with undiluted vigor in criminal matters has been seriously impaired. [16]

We next consider the Government's contention that the movants are barred from applying for the vacatur of the void order until they comply with the direction of the Court of Appeals to post security for the fines, and the related contention that they waived their right to a determination of the jurisdictional issue upon appeal because of failure to post the security. There can be no question of the Court of Appeals' inherent power, in addition to that expressly granted under Rule 38(a) (3) of the Federal Rules of Criminal Procedure, to condition a stay of execution under a contempt order upon posting of security. There is, however, in this Court's view a substantial question as to whether the Court had the power to foreclose the contemnors' right of appeal from the contempt order by requiring as a condition the posting of security to cover the amount of the fines. [17] A stay of execution pending appeal is one thing; the right of appeal is another. Rule 38 of the Federal Rules of Criminal Procedure [18] provides for a bond in the amount of the fine only where the appellant seeks a stay of execution. [19] Here the appellants did not seek such a stay; nonetheless, for fail-

12. 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931).

13. 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).

14. 305 U.S. at 172, 59 S.Ct. at 172, 59 S. Ct. at 136.

15. Glasgow v. Moyer, 225 U.S. 420, 32 S.Ct. 753, 56 L.Ed. 1147 (1912); Toy Toy v. Hopkins, 212 U.S. 542, 29 S.Ct. 416, 53 L.Ed. 644 (1909).

16. See cases cited at note 11.

17. The Government, in its Court of Appeals brief, did not request that the movants be required to post security, but urged dismissal of their appeal upon the ground that they had removed themselves and their property from the United States. Government's Brief, pp. 10–11. The sole authority cited by the respondent in seeking dismissal, Eisler v. United States, 338 U.S. 189 and 883, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949), was hardly apposite. Eisler did not involve an appeal as of right to an intermediate court, but rather the Supreme Court's discretionary certiorari jurisdiction and its "practice" not to entertain moot appeals. In any event, in Stern, the issue of the power of the Court of Appeals to deny the appellants their right of review where procedural appellate requirements were complied with appears to have escaped the attention of counsel and the Court.

18. Made applicable to the Court of Appeals by its own rules. 2d Cir.R. 10(c).

19. In civil proceedings, an appellant is required to post bond only in the amount of costs, unless he seeks a stay in execution of the judgment below. Fed.R.Civ.P.

ure to file security for the payment of the fines their appeal was dismissed. In the circumstances here presented, the contention that the movants waived their right of appeal is without support. Stern is the only instance this Court has been able to find where this procedure—conditioning consideration of an appeal upon posting a bond in the amount of the fine—has been used to supplement the enforcement measures set out in 18 U.S.C. §§ 3565, 3569.[20] In United States v. Baird[21] our Court of Appeals wrote in an analogous context:

> "We hold * * * that the federal statutes governing the 'Collection and payment of fines and penalties,' and the 'Discharge of indigent prisoner', 18 U.S.C. §§ 3565, 3569, provide an exclusive pattern of procedure to be followed in the matter of committed fines imposed in criminal cases * * *."

■ The movants are entitled to relief from the void orders without the requirement of now posting the security ordered by the Court of Appeals as a condition for the hearing of their appeal. To require them to do so would impose a futile condition. It can hardly be doubted that if these petitioners had been imprisoned under the contempt order that their release in the light of Thompson would have been commanded and no principle of res judicata could defeat that right. There is no reason why a different rule should apply with respect to a criminal contempt order which is void and under which a fine was improperly imposed.

73, incorporated in 2d Cir.R. 10(a). This limitation on the power of appellate courts to require security of an appellant is of ancient vintage. See Judiciary Act of Sept. 24, 1789, c. 20, § 22, 1 Stat. 73, as amended by Act of Dec. 12, 1794, c. 3, 1 Stat. 404; Kountze v. Omaha Hotel Co., 107 U.S. 378, 2 S.Ct. 911, 27 L.Ed. 609 (1882) ; Lewis v. Holmes, 194 Fed. 842, 845 (7th Cir. 1912).

20. Where a defendant has been sentenced both to imprisonment and to payment of a fine, bail pending an appeal may not be

The effectiveness of the order to be entered herein shall be conditioned upon the return by petitioners into the Court's registry of the subpoena and mileage fees paid to them by the American Consul at the time of the service of the subpoenas upon them.

conditioned upon his executing a supersedeas bond in the amount of the fine "unless the defendant desires to stay the payment of the fine." Yankwich, Release on Bond by Trial and Appellate Courts, 7 F.R.D. 271, 281, 282 (1947). See also, Cain v. United States, 148 F.2d 182 (9th Cir. 1945) ; United States v. St. Clair, 42 F.2d 26, 29–30 (8th Cir. 1930). Cf. United States v. Hodson, 77 U.S. (10 Wall.) 395, 409, 19 L.Ed. 937 (1870).

21. 241 F.2d 170, 173 (2d Cir. 1957).