In the Matter of a Grand Jury Subpoena
Served on Walter GERMANN.

No. M 11–188.

United States District Court
S. D. New York.

Sept. 27, 1966.

———◇———

Robert M. Morgenthau, U. S. Atty.,
New York City, for the United States;
John S. Allee, Pierre N. Leval, Asst. U. S.
Attys., of counsel.

Louis Bender, New York City, for defendant.

## MEMORANDUM

COOPER, District Judge.

This motion seeks to vacate, pursuant to Rule 60(b) (4), F.R.Civ.P. and Rule 57(b), F.R.Crim.P., this Court's judgment of August 15, 1966 finding petitioner in civil contempt for his failure to appear before the Grand Jury on May 31, 1966.

On July 13, 1966, by order to show cause, the Government moved to hold petitioner in contempt. A hearing was held before this Court on August 15, 1966. Petitioner, though receiving notice thereof, did not attend. The basic facts as found by the Court are not in dispute.

Petitioner, a Swiss citizen, was personally served in New York City on April 28, 1966 with a Grand Jury subpoena returnable on the 29th before the April Grand Jury. He appeared on that date, and was directed by the Grand Jury foreman to reappear before the May Grand Jury on May 2, 1966. Petitioner complied with this direction. He next appeared on May 6 and 10th, each time pursuant to the oral direction of the foreman of the May Grand Jury.

During the course of such proceedings, petitioner asserted that without the benefit of certain books and records located in Switzerland, he was unable to provide the Grand Jury with certain information it sought to elicit. Petitioner was thereupon granted permission to return to Switzerland to examine the relevant records and return before the Grand Jury for a continuance of his testimony. In accordance with that understanding and by mutual consent, on May 10, 1966 the foreman again orally directed him to reappear on May 31, 1966.

Despite the foreman's order and petitioner's promise to reappear on May 31st, he purposely failed to do so. Instead, petitioner on May 31st sent his New York attorney, Richard Wels, Esq., the following telegram:

I am sorry to inform you that, after testing my conscience and weighing my responsibilities, and after taking the best legal advice I could have found, I will not appear today, Tuesday 31st. There is an acute conflict of law between our two countries and the unlimited scope of the questioning would force me to continuously violate Swiss law both on banking secrecy and economic espionage. As I am a Swiss citizen I will obey the Swiss laws first as the United States expect their citizens to obey their laws first. Please advise the competent authorities and express my apologies.

By order to show cause, signed July 13, 1966 and returnable August 1, 1966, the Government moved to hold petitioner in contempt. A copy of this order with its supporting affidavit was served on Mr. Wels, whose firm accepted service on July 13, 1966. In addition, a copy was sent by certified mail to petitioner's address in Basel, Switzerland. Affidavit of Assistant United States Attorney John S. Allee, sworn to September 7, 1966, ¶ 6.

However, by letter dated July 21, 1966, petitioner discharged Mr. Wels with respect to the Grand Jury proceedings, apparently because of a difference of opinion as to his failure to appear. Petitioner then retained the firm of Donovan, Leisure, Newton & Irvine, Esqs. to represent him. Thereafter, the Government consented to adjourn the hearing to August 15, 1966, although counsel had asked for at least a month's adjournment. On August 4, 1966 the Government was advised that this firm would no longer represent petitioner. Mr. George S. Leisure, Sr., of counsel, cabled petitioner on August 5, 1966 that the hearing, nevertheless, would take place on August 15, 1966 as scheduled. Affidavit of Assistant United States Attorney John S. Allee, sworn to September 7, 1966, ¶ 7.

On August 15, 1966, Mr. Green, an attorney with the firm of Baker, McKenzie & Hightower, Esqs. stated in open Court that his firm had been recently approached in connection with representing petitioner, and requested an adjournment to September 6th in order to decide whether to undertake his defense. The Court denied this request. Mr. Green did not

appear for petitioner; he remained in the courtroom on that day as a spectator.

At the close of the Government's evidence, we found petitioner in civil contempt for wilfully and knowingly failing to appear on May 31st in response to a lawful direction of the foreman. It was the order of this Court on August 15th that unless petitioner appeared before the Grand Jury on or before August 22, 1966 he would be subject to a fine of $25,000 and a further fine of $1,000 for each day thereafter that he failed to appear. To date, petitioner has failed to appear.

■ Petitioner raises several arguments in support of vacating the judgment of this Court. In essence, he argues that: (1) the order to show cause of July 13, 1966 was improperly served; (2) there was a denial of petitioner's right to counsel; (3) the Court lacked jurisdiction over petitioner.[1]

### Improper Service

Petitioner contends that the order to show cause of July 13, 1966 was jurisdictionally defective in that it was not personally served upon him. His argument is without merit.

■ When the subpoena of April 28, 1966 was personally served upon him, the jurisdiction of this Court was established. The order to show cause was not a new order, requiring additional personal service of process. It brought on a proceeding merely " * * * ancillary to the grand jury hearing and designed

as an aid to it." Harris v. United States, 382 U.S. 162, 165, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965). Thus, service could properly be made upon petitioner or his attorney. Rule 5, F.R.Civ.P.; Tilghman v. Tilghman, 57 F.Supp. 417 (D.C.1944); Government's Memorandum, page 18. In the instant case both methods were used, giving petitioner adequate notice of the hearing.[2]

Indeed, petitioner does not contend, nor could he, that he did not have actual notice of the hearing on August 15, 1966. The fact that the notice contained within the order to show cause, at least on its face, might have been inadequate for the purposes of criminal, but not civil, contempt is, of course, irrelevant.

### Right to Counsel

■■ Petitioner argues that he was denied his right to counsel. Of course, a person subject to contempt proceedings has a constitutional right to be represented by counsel. But the mere fact that petitioner was not represented at the hearing of August 15, 1966 does not constitute per se a denial of this right. The record before us is barren of any evidence indicating a denial of counsel or that there was inadequate time to obtain counsel if desired.

### Obligation to Reappear

Petitioner's main contention is that he fully complied with the April 28, 1966 subpoena when he appeared on April 29th, the return date specified therein. Since no additional subpoena commanding his

1. The Government makes the threshold argument that petitioner must personally appear before this Court in order to attack the validity of the Court's order on other than jurisdictional grounds. See In Re Thompson, 213 F.Supp. 372 (S.D. N.Y.1963), reversed on other grounds, U. S. v. Thompson, 319 F.2d 665 (2d Cir.); In Re Stern, 235 F.Supp. 680 (S. D.N.Y.1964). To allow otherwise, says the Government, is to permit petitioner to maintain a "heads I win, tails you lose" status, because he had rendered the Court powerless to enforce its judgment against him if his contentions are found to be without merit. We reject this argument, for we note that petitioner allegedly has

assets within this jurisdiction that are subject to the Court's order. Furthermore, the fact that petitioner's credit standing, not only locally but internationally, could be affected by our order, should give him standing to raise all arguments through his attorney.

2. Petitioner's contention that Mr. Wels was not his attorney is belied by the latter's affidavit. While Mr. Wels did not appear with petitioner at the Grand Jury proceedings, he represented him in several respects until he was notified of his discharge some days after service was accomplished. Affidavit of Mr. Wels, sworn to September 12, 1966.

reappearance on the 31st had been served,[3] he contends that he was under no legal obligation to reappear on that date. We cannot agree.

■ Petitioner relies heavily on New York case law holding that a grand jury witness is compelled to appear only on the date stated in the subpoena. New York does not consider a foreman's "order" to reappear at a subsequent time a "process" or "mandate" of the Court punishable by contempt for noncompliance. Matter of Spector v. Allen, 281 N.Y. 251, 22 N.E.2d 360 (1939); Matter of Mullen v. Halleran, 177 Misc. 734, 31 N.Y.S.2d 710 (1941). He urges that the similarity of the New York and federal contempt statutes makes the New York cases especially persuasive. See Local Civil Rule 15. However, whether the subpoena is "spent" once the witness makes his appearance, or can be continued to compel attendance, is determined by the subpoena, not the contempt, statute. Matter of Mullen v. Halleran, 177 Misc. 734, 31 N.Y.S.2d 714.

In the instant case, the original subpoena, dated April 28, 1966, calling for petitioner's appearance distinctly states, " * * * and not to depart the Court without leave thereof, or of the United States Attorney."

*Unlike the New York practice,* under federal law prior to the promulgation of the Federal Rules, a subpoena, once served, compelled the witness to appear, not merely on the specific date ordered, but " * * * to remain in attendance until excused by the court or by the government's representatives." Blackmer v. United States, 284 U.S. 421, 443, 52 S.Ct. 252, 257, 76 L.Ed. 375 (1932); See United States v. Van Duzee, 52 F. 930 (8 Cir. 1892). The continuing nature of the subpoena was expressly recognized by the subpoena statute in force at the time of the *Blackmer* case. Section 655, 28 U.S.C. stated that a witness was " * * *

not to depart the court without leave thereof, or of the district attorney; and under such process they shall appear before the grand or petit jury * * *." (Revised Statutes § 877, cited to this section, was derived from the Act of February 26, 1853, 10 Stat. 169).

The subpoena statutes relevant to the instant proceedings, i. e., Rule 17, F.R. Crim.P. (eff. 1948) and Rule 45, F.R. Civ.P. (eff. 1938), supercede 28 U.S.C. § 655 and R.S. § 877 and omit the above quoted language. However, the Notes of the Advisory Committee (see Rule 45, F.R.Civ.P.) do not indicate any Congressional intent to limit the efficacy of the subpoena, but rather to "simplify the form." Professor Moore apparently still regards the *Blackmer* case, decided prior to the Federal Rules, as presently applicable law. 5 Moore, Federal Practice ¶ 45.03[2] n. 5 (1964 ed.). Cf., Kenyon v. Automatic Instr. Co., 10 F.R.D. 248, 252 (W.D.Mich.1950).

■ It is clear that the subpoena in the instant case (Exhibit 1) contains the language previously found in Section 655, ordering the witness attendance until he is granted "leave to depart." Even though petitioner was permitted to go to Switzerland, it cannot be seriously contended that he was "excused" with the result that the Court lost jurisdiction over him. Such an interpretation would be at odds with the express direction of the foreman commanding his reappearance.

We note, too, that the affidavits submitted by the Government attest to the long standing practice in this district with respect to using one subpoena, as here, to compel the attendance of the witness at subsequent meetings of the Grand Jury. See also Government's Memorandum, pp. 13–14. Petitioner has advanced no compelling reason why this practice should now be abandoned.

■ Petitioner was clearly aware that he had not been discharged. It is not

---

3. The fact that petitioner had previously appeared before the April Grand Jury could not affect the power of the May Regular Grand Jury to command his reappearance on the 31st. It is not con-

troverted that both Grand Juries were concerned with similar investigations, or that petitioner objected to his appearance before that body.

contended that his failure to appear was other than wilful or knowing. The allegation that petitioner, by testifying, might violate Swiss law is speculative and unavailing as a defense to a contempt proceeding predicated on his failure to appear. Application of Chase Manhattan Bank, 297 F.2d 611 (2d Cir. 1962), cited by petitioner, does not require a contrary result.

In sum, the failure of petitioner to appear on May 31, 1966 flouts the lawful process of this Court and is contemptuous.

Accordingly, motion to vacate is denied.

No convincing presentation of fact appearing in support thereof, the application for a stay is denied in all respects at this time.

So ordered.